## SILVER BOW M. & M. CO., respondent, *v.* CLARK ET AL., appellants.

MINING CLAIM — *Right of possession — Rights of locator.* — Under the act of congress of July 30, 1866, as amended by the act of May 10, 1872, every valid location of a mining claim is accompanied by the right to the exclusive possession and enjoyment of the soil of such claim. This right to the exclusive possession and enjoyment of the surface ground is not a mere right or easement to use it for mining purposes only; it entitles the locator, upon complying with the terms and conditions of said statutes, to an absolute conveyance of such property.

SAME — *Prior mining location not affected by town site entry.* — A valid location of a mining claim, on public lands of the United States, is not affected by a subsequent entry of a town site, although such claim is situated within the boundaries of the town site. Consequently, the owners of such mining claim are under no duty or obligation to file an adverse claim to the entry of the town site.

SAME — *Patent to town site — Unauthorized patent.* — The land department of the United States is only authorized to issue patents to the probate judge, for town site purposes on the public lands, not previously granted and sold or reserved from sale; it cannot include in such patents any mine, mining claim or possession. If the department had no authority to issue the patent, or if it was issued for land previously granted or reserved from sale, the patent is so far void.

SAME — *Patent relates back to location.* — A patent for a mining claim relates back to the location and is the consummation of the purchase there made. No unauthorized act of the land office in issuing the patent can defeat such title.

SAME — *Rights of patentee — Unauthorized exceptions in patent.* — The patentee of a mining claim, claiming under a prior location, is entitled to the exclusive possession and enjoyment of all the surface ground thereof, and the land department cannot except the same from his patent. If it does so, its act, to that extent, is void and of no effect upon the property conveyed, and may be so declared in an action at law.

*Appeal from Second District, Silver Bow County.*

KNOWLES & FORBIS, for appellants.

This was an action in the nature of an action of ejectment on the part of the respondents to recover the possession of certain real estate claimed by respondents as part of the Pawnbroker lode, and by the defendants as part of the Butte town site; the said premises being lots, streets and alleys in said town site. The appeal is taken by two of the parties defendants, interested in the judgment herein, namely, the city of Butte and Edwin H. Irvine. The appeal is on the judgment roll.

The final judgment is deemed excepted to by the defendants. Laws of Montana, 1879, p. 91, sec. 280, and p. 92, sec. 283.

Upon an appeal from a judgment or order the appellate court may review the verdict or decision and any intermediate order or decision excepted to which involves the merits or necessarily affects the judgment. Laws of Montana of 1879, sec. 427, Code of Practice.

If the findings of fact are inconsistent with the judgment, or the judgment inconsistent with the findings of fact, the appellate court will review the judgment. *Clark* v. *Haber*, 20 Cal. 196; *James* v. *Williams*, 31 Cal. 211; *Flanerty* v. *Anderson*, 4 Nev. 437; *Dyer* v. *Chase*, 57 Cal. 284.

A finding of fact which negatives the existence of a fact admitted by the pleadings is a finding against evi-

dence, and the judgment rendered thereon is erroneous. *Silvey* v. *Neary*, 59 Cal. 97.

Considering these authorities as they are applicable to this case, we claim the right to have the judgment reviewed in this case.

From the whole scope of the pleadings, agreed facts and findings of the court, it is apparent that the plaintiff claims the premises as a quartz lode or mineral lode, and the defendants the same as a town site; that this case is a conflict between lode claimants and town site claimants.

After a review of the facts in the case the court finds his fourth conclusion of law (see Trans. p. 96, conclusion 4), that by the location of the said Pawnbroker lode claim in 1875 the locators thereof acquired the exclusive right of possession and enjoyment of all the surface within the lines of said claim, and that said right and title is paramount to any right of defendant.

There does not seem to be any finding of fact upon the point as to when the Butte town site was settled for that purpose. If there are any presumptions to be indulged in upon this point, the patent to the Butte town site would raise the presumption that the premises were settled as a town site before the location of plaintiff's claim.

In considering the facts of this case as they appear in the pleadings and agreed facts and findings of the court, this legal conclusion does not follow and is error.

Section 2386 of the Revised Statutes of the United States recognizes the fact there may be town lots upon a mining claim. There is no limit upon the character of the public domain which may be devoted to a town site. Sec. 2387, R. S. U. S.

The statute upon the subject of the location of mining claims and the statute upon town sites are *in pari materia* and should be construed together. The laws upon the subject of public lands are all *in pari materia*. 2 Op. Att'y Gen. 44; 4 Abbott's Nat. Digest, 228.

Statutes are *in pari materia* which relate to the same

person or thing or to the same class of persons or things. Sedg. on Stat. and Const. Law, 210.

The laws upon the subject of mining locations and town sites, being *in pari materia,* should be construed together.   Weeks on Mineral Lands, p. 306, sec. 222; Copp's U. S. Mineral Lands, p. 201.

Statutes should be so construed as to give effect to every part thereof.   Sedg. on Stat. and Const. Law, pp. 200, 212; *The City of San Francisco* v. *Hazen,* 5 Cal. 170; *Cochran* v. *Taylor,* 13 Ohio St. 388; *Gates* v. *Salmon,* 35 Cal. 576; *Pennington* v. *Cox,* 2 Cranch, 33; *Pennington* v. *Cox,* 1 Curtis' Dec. 437–441.

A later statute which is general and affirmative in its provisions will not abrogate a former one which is particular or special.   *Third Nat. Bank of St. Louis* v. *Harrison et al.* 8 Fed. Rep. 721.

Taking these rules of construction as our guide in construing sections 2322 and 2386 of the Revised Statutes of the United States, and we have the right of the miner to go upon the public domain and locate land for mining purposes, and persons for the purposes of a town site the right to go upon the same and settle thereon.   The mining claimant does not have the exclusive possession of the premises, but only such use and enjoyment thereof as is necessary for his mining purposes.   Thus matters would stand as long as there was no patent to either party to the premises.

When the mining claimant obtains a patent all rights he acquired by virtue of the location are merged in the patent title.   The locator of a mining claim has only a possessory right — a mining easement.   *Belk* v. *Meagher,* 104 U. S. 283.

When a lesser estate comes to a person possessing in fee the paramount title, the lesser estate is swallowed up or merged in the fee.   *James* v. *Morey,* 14 Am. Dec. 475, and note to same on p. 512; *James* v. *Morey,* 2 Cowan,

284 (same case as above); 4 Kent, 108–112; 1 Wash. on Real Prop. 108; 3 Abbott's Nat. Dig. p. 268, sec. 6.

Both parties in this case have patents from the United States, and their rights should be determined by these. The location of the premises by the grantors of plaintiffs should not be considered.

There is another point to be considered in construing the mineral act and the town site act. It is evident from the mineral act of 1872, that the power to define the width of a mining claim can be regulated by local rules and customs of miners. See secs. 2320 and 2324, R. S. of U. S.

The width of a mining claim should be regulated by local laws or rules of miners not in conflict with the act of congress. Weeks on Mineral Lands, 102, sec. 55.

The possession and necessary use of mineral lands to which town lots are subject under the town site act is, according to said section 2386 of the United States Revised Statutes, mineral veins whose possession is recognized by local authority and to the extent so possessed and recognized. Only where mineral veins are possessed, and the possession thereof is recognized by local laws, can town lots be subject to such possession and the necessary use thereof.

The agreed statement of facts in this case shows that there were no miners' rules and customs in the district where the premises are situate. See Transcript, p. 52. There was no statute of the territorial legislative assembly that prescribed the width of any mining claim at the date of plaintiffs' location. All acts upon the subject were repealed on May 8, 1873. Extra Session of Legislative Assembly, 1873, p. 83. None were again enacted upon this subject until 1876. See R. S. 1879, p. 590.

Town lots in Butte, then, in this case were not subject to any surface possession of any lode, because no such possession was recognized by any local authority.

In the land department of the general government it has been the established custom to construe these statutes together, and to hold that one modifies the other, and they have acted upon this construction in issuing patents. Copp's U. S. Mineral Lands, 281.

Usage under a statute is of great value in construing it. Sedg. on Stat. and Const. Law, 215.

In the case of *Steel* v. *Smelting Co.* 106 U. S. 446, the supreme court of the United States, while laying down a very broad rule in regard to the location of mining claims within town sites, which should be considered in reference to the fact in that case that the premises were an unpatented town site, strongly intimates that the patent to the mining claim should be considered with reference to its occupation. It says, "lands embraced within a town site on the public domain, *when unoccupied*, are not exempt from location and sale for mining purposes." The inference is that if they are occupied they would not be.

Again, on page 450 of the opinion in said case, we find, " Whenever, therefore, mines are found in lands belonging to the United States, whether within or without town sites, they may be claimed and worked, providing existing rights of others from prior occupation are not interfered with."

How could such language be used by that court unless it construed the said statutes as they have usually been by the United States land department? If we are correct in the above, then the finding that the plaintiffs had the right to all the surface ground included in the Pawnbroker location was erroneous.

There was no finding of fact that the possession of said surface ground was necessary for the working of the Pawnbroker lode. There was no such issue in the case. There was no finding that any such possession was recognized by local authority of any kind.

The conclusions of law, numbered 1 and 2, found upon

page 95, are based upon the same erroneous construction of the statute, as we believe, and are therefore erroneous.

In the patent issued to plaintiffs in this case, there is excepted from the grant all lots, streets, alleys, etc. The presumption is that the land department, in issuing this patent, "found existing rights of others from prior occupation," and these were excepted from the grant. The finding was within the scope of the authority of the United States land department. *Steel* v. *Smelting Co.* 106 U. S. 450.

If the finding was erroneous, the patent cannot be attacked collaterally in an action at law. *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Steel* v. *Smelting Co.* 106 U. S. 447.

The exception in the patent of plaintiffs was correct. The proviso in the town site patent to O'Bannon was, "no title shall be hereby acquired to any mine of gold, silver, cinnabar or copper, or to any valid mining claim." See Transcript, p. 92.

In this case there is no claim on the part of the defendants to any mine. The patent of plaintiffs conveys all veins and lodes within the Pawnbroker lode. There is no conflict about those. But plaintiff urges that in its patent it has not got a deed to the Pawnbroker mining claim, as it understood it, with the exclusive right of possession of its surface ground.

This is upon the supposition that the above provision in the town site patent reserved the fee of all the surface ground in the Pawnbroker lode from that patent. The language is, "valid mining claim." A mining claim is only the temporary right of possession and the right to mine the premises. The paramount title remains in the government. *Belk* v. *Meagher*, 104 U. S. 283. The government of the United States, having the fee, could convey. The general government would have the right to convey this fee until it was passed for a patent and the premises paid for. *Steel* v. *Smelting Co.* 106 U. S. 456;

*Frisbie* v. *Whiting,* 9 Wall. 187; *The Yosemite Valley Case,* 15 Wall. 77.

The mere location of a mining claim does not give the locator a right to a patent. *Meyendorf et al.* v. *Frohner,* 3 Mont. 322–23.

Give this proviso in the town site patent the fullest force its language will allow, and the patent to O'Bannon conveyed all but the mines and valid mining claims held under the existing law. The fee to the premises included in this mining claim was conveyed. When the government conveyed the fee to plaintiffs, it could not convey what it had already conveyed to O'Bannon. Hence the exception was proper. *Haynes* v. *Stanley,* 13 Fed. Rep. 217.

The court finds, in his first conclusion of law, "No title or right of possession to said lode, claim, or any part thereof, was conveyed or passed by said town site patent, or by any deed made by the probate judge thereof." This is not correct. The patent to O'Bannon of the Butte town site conveyed to him all of the premises included therein. *Bryan* v. *Forsyth,* 19 How. 334; 1 Miller, 731; *Meehan* v. *Forsyth,* 24 How. 175; 4 Miller, 52; *Gregg* v. *Forsyth,* 24 How. 179; 4 Miller, 58; *Dredge* v. *Forsyth,* 2 Black, 463.

This proviso was not properly an exception or a reservation. It only made known that the patent was subject to such rights.

In considering what was a valid mining claim, secs. 2322 and 2386 should be construed together. If one modifies the other, then it was not an exclusive right to all the surface within the bounds of the claim.

The finding of the court, "that the reservation and exceptions of town site rights, etc., contained in the patent for the Pawnbroker lode claim were unauthorized by law and void," is error.

In the first place, what is referred to here was not a reservation, but an exception. In the second place, the

exception is in the granting clause. That has always been the rule in such cases in the land department at Washington.

Where an exception is in the granting clause, these conveyances stand as though the thing excepted had never been included in the deed. 3 Washburn on Real Estate, p. 433; *Greenleaf* v. *Berth,* 3 Pet. 302; 10 Curtis, 126.

If the exception is excluded on the ground that the land department had no right to make the exception, then the grant is made to include premises never granted. It is not the striking out what was actually included in the grant, but it is the enlarging of the grant and embracing what was not granted. It is making the patent convey what was never intended to be conveyed thereby, and what as a matter of fact was not conveyed thereby. It would be allowing the court to define the premises in the grant as he thought the land officers ought to have made them, and not as they did make them. It would be allowing a court to construe a grant as it ought to have been, and not as it is.

The judgment in this case was based upon these conclusions of law. They are a part of the same. They were not warranted by the facts as they appear in the case, and the judgment is not warranted by them.

The question presented in this case is the construction of the two patents issued by the government for the same tract of ground.

The first patent is dated September 26, 1877, and issued as a town site patent, and contains the following clause: "No title shall be hereby acquired to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession held under existing laws of congress." p. 92, Transcript.

The second is a mining claim patent issued January 15, 1880, and contains a clause "excepting and excluding from said patent all town property, rights upon the sur-

face, and all houses, buildings, structures, lots, blocks, streets, alleys, or other municipal improvements on the surface of the said Pawnbroker mining claim." pp. 30, 41, 93, Transcript.

These facts all appear by admissions in the pleadings and the findings of the court.

Under this state of facts, for whom should judgment have been rendered? In favor of the town site or the quartz claim patent? If for the claimants under the town site patent, then the court erred in finding a judgment for plaintiff upon the findings, and this judgment may be reviewed on appeal from the judgment roll.

Aside from the clauses contained in the patents (which each party claims is an exception in the other's patent, but disputes that it is an exception in his own), there would be no controversy as to the construction of these grants.

The town site patent having been granted something over two years prior to the quartz patent, would be construed to convey the title to the premises, and a subsequent patent for the same premises would convey no rights or property whatever. This is a well settled doctrine of construction and requires no citation of authorities to support it.

Then the only question left for the determination of the court is the construction of the clauses referred to. Whether these clauses are exceptions, or intended as such. If so, what is the effect upon the grant?

The clause contained in the town site patent is substantially in the words of the United States statute (sec. 2392, R. S.), under which section this clause presumably was inserted in the patent.

Under the provisions of this section of the statute there can be little doubt of the intention and meaning of congress. It is plainly evident that congress did not intend to part with mineral veins or rights to town site claimants, and yet it is equally evident that congress

was aware of the necessity of allowing town sites to be laid out and patented on mineral ground.

It was realized that mineral ground might be more valuable for the precious metals it would yield than for the purposes of occupancy. And yet it was and is a well known fact that the surface of the ground is rarely valuable for mineral purposes, further than so much thereof as may be required for necessary houses and machinery and dumping purposes. It was never intended by congress that land should be appropriated under the mining laws for any other purposes than for mining. The appropriation of all character of public domain other than mineral ground is limited by law to a certain number of acres to each individual. A certain term of residence is required of each appropriator, and he is required to prove that the appropriation is for his own individual use and benefit. None of these things are required in the acquisition of mining lands — the government will grant any number of claims to the same person. These facts clearly indicate that congress did not intend by mining laws to grant the public domain for agricultural or town site purposes, or for any purposes other than mining. And it is a reasonable and clear implication of the mining statute that more than one right may exist in a mining claim — not only between miners, which is clearly expressed, but between miners and occupants of mining claims.

This unlimited grant of land to the miner was not intended to secure to him lands which he might call mineral, but which might be more valuable for other purposes, but the very object of the statute was to secure to him the mining right; for the mining law has disregarded every safeguard and restriction against the monopoly of public lands which have been provided in other cases. And the action at bar is one to dispossess actual settlers and occupants, not for the purpose of securing a mining right, but in order to obtain the surface for specu-

lative purposes other than pertain to the use of the ground for mining easements or rights.

But congress has not been silent on this question. By law the two rights to mineral lands have been expressly recognized.

Section 2386 provides that when mineral veins are possessed, which possession is recognized by local authority and to the extent so possessed and recognized, the title to town lots to be acquired shall be subject to such recognized possession and the necessary use thereof.

This section was enacted March 3, 1865. Section 2392, before referred to, was enacted March 2, 1867, and from its date it may be claimed by respondents that the latter section repealed the former. This position is not tenable. Whatever may have been the intention of congress upon the passage of the law of 1867, the latest expression of congress upon the subject is in the revision of 1874. In that revision both sections are re-enacted, and no preference given to one over the other. The court must so construe both of these sections as to give effect to both; and if this is done it is evident that it is the meaning of the law that the title to town lots acquired on mining claims "shall be subject to such possession *and the necessary use thereof.*" Now, if the court construes the patent as respondents ask, and decides that the town site patent grants no right whatever, what is the meaning of the statute? "Subject to such possession and the necessary use thereof" certainly does not mean that the town site shall acquire no rights whatever, but means subject to necessary use and possession of ground for mining purposes.

Section 2392 will bear the same construction, and means that the town site patent shall not convey any mineral veins or mining rights, and these the town site claimants have never attempted to claim.

We would not be understood to maintain the principle that mining claimants would not have the exclusive right

to the surface of the ground where occupants were not claiming under title from the government, but claim that, as in the present case, the government can and does grant two separate rights or easements to the same tract of mining ground, and that these are expressly authorized and recognized by law.

This statute, we believe, has never been construed by the courts in a case similar to this, and if our views are correct, then appellants would be entitled to judgment upon the findings of the court.

But admitting that we have not properly construed the statute, and that the government will not and cannot, under the present law, grant two estates in the same tract of ground, then the court must proceed to construe the patents issued and determine the rights thereunder. And the further argument which we advance is upon the supposition that the court will construe the law as authorizing only one estate or grant.

The government, by its patent dated September 26, 1877, granted the ground in controversy to the authorities as a town site. It is not unreasonable to suppose that the patent contained an accurate description of the Butte town site by metes and bounds (all government patents contain such a description). And the admissions and findings show that the government granted all of the Butte town site absolutely to the proper authority in trust as provided by law. After this grant there is contained in the patent the clause referred to. Is this an exception? There is no specific property mentioned as excepted from the grant. There is no clause in the granting clause showing that any ground is excepted from the patent. The granting clause grants the ground absolutely. If the ground in controversy can be said to be excepted from the grant where it is not specifically described, then so can any number of claims, until nothing shall remain to the town site under its patent. And although it does not constitute a part of the record, such

is the state of facts, that, if the quartz claims shall pre-
vail, nearly the entire town site will be absorbed. We
mention this to show that our argument is not far-fetched
or fanciful, but is founded upon a hypothesis which has
not only possibility but probability. If, then, quartz
claims should cover the entire surface of the town site,
and the court should construe these patents as the lower
court has done, nothing would pass by the town site pat-
ent, and the government would have gone through the
very stupid form of granting a tract of ground and by a
clause in the same instrument excepting the whole
granted premises from the grant. And if the argument
against the exception as to all of the ground granted is
good, it is equally good as to an exception of nine-tenths
or any smaller portion not specifically described. If this
patent contains no specific description of the property
excepted, how will the courts ascertain and determine
what is granted or excepted? The amount or portions
excepted were not known by the grantor or grantee.
There is nothing in the patent that refers to the excepted
portions in such a manner that they might be ascertained.
Nothing by which the limits of the excepted portions
may be made certain, but an indefinite portion, and pos-
sibly all of the granted premises; a portion to be deter-
mined by extrinsic evidence, in many cases uncertain, in
many mistaken and in many absolutely false. If the
exception is to be sustained in its broadest sense, as asked
by respondents, then every claim that existed within the
Butte town site at the date of the patent is absolutely
excepted from the grant. Whether the quartz claimant
has obtained patent to the premises or has abandoned or
forfeited the claim makes no difference. If it existed at
that time it was excepted from the town site patent, and
whether appropriated at the present time or not is imma-
terial. If not appropriated it is public land, subject to
location, for it was excluded from the town site patent,
and the government continues to hold it.

If it is public domain now, it will be for all time in the future until the government parts with its title. Till then no statute of limitations will run, and sometime in the future, when witnesses are dead or scattered or the facts forgotten, it would be an easy matter to prove by corrupt methods a valid location of a mining claim on the Butte town site which existed during the year 1877, and eject the occupants from the surface. This is but carrying the argument to its logical effect.

If one claim was excluded, all were. If the clause is an exception at all, it is an absolute one. And if it is an absolute exception, no title was ever granted by the Butte town site patent, and no continuance of occupancy will give title under the patent.

The words in the clause are not apt and do not constitute an exception. "No title shall be hereby acquired" are the words of the clause. It does not except or exclude from the grant anything. The patent grants absolutely, and in consideration of so much an acre (which includes the entire acreage of the town site), certain land described. And then in a subsequent clause provides that the very land granted shall not be granted — a clause so inconsistent that it cannot be sustained or construed.

Sustaining our views on the questions discussed we refer to Greenleaf's Cruise on Real Property, book 4, marg. pp. 271-2; 3 Washburn on Real Property, marg. pp. 639-40; *Greenleaf* v. *Birth*, 6 Pet. 302.

As bearing upon the question of uncertainty when ground is unsurveyed and is described as quantity and not by boundaries, see *Slidell* v. *Grandjean*, 111 U. S. 412, 439.

The clause contained in the town site patent is not an exception; it is nothing more than a clause inserted in the patent for the protection of the government in event the claimants under the mining locations should oust the claimants under the town site. And the government by

the patent parted with its title to the land described. *Meehan* v. *Forsyth*, 24 How. 175; *Dredge* v. *Forsyth*, 2 Black, 563, 570.

If, then, the clause is not an exception, and the government parted with its title to the land by the town site patent, then the best title, because it was the first granted, is in the claimants under the town site, and they should recover. *Stoddard* v. *Chambers*, 2 How. 284; *Boardman* v. *Lessees of Reed*, 6 Pet. 328; *Sac. Valley R. Co.* v. *Cook*, 61 Cal. 341.

It may be objected by respondents that the land department was not authorized to issue a patent for a town site on mineral land, and consequently the patent in this case would be unauthorized by law and void, regardless of the question of exception in the patent, and that it is immaterial whether such exception is contained in the patent, and that the courts would supply the exception if the land office omitted it. To this we reply: That if town sites cannot be patented on mineral lands, the very fact of the government granting such a patent is conclusive of the fact that the land is not mineral. In the matter of granting the patent the land office acted judicially and determined the character of the land — determined that the land patented is such as is contemplated in the town site act of congress. And the decision of this question is one within the jurisdiction of the land office, and its decision of that question is final and conclusive. It is, in the absence of proof to the contrary, to be presumed that all of the proceedings prior to the issuance of patent were regular, that due and regular notice was given, and that such proof as is required in such cases was taken and heard. That any party feeling aggrieved by the issuance of the patent had regular notice and ample time to file adverse claims to the application. And then was the time when plaintiff should have objected. If respondents' position is correct, then an adverse claim would have been sustained in the courts,

and the authorities prohibited from obtaining a patent to ground belonging to another. But the respondents stood by and presumably knew of the proceedings, but made no objections; allowed the land office to be misled as to the character of the land, and permitted a patent to be issued to the ground as a town site. And by the judg-' ment of the land office they are concluded.

The patent certainly grants a town site title. If that title is, as we have suggested, one of the estates authorized by law. and granted to mining ground, then respondents cannot complain, for appellants are entitled to such estate. If these two estates are not contemplated by law, and only one estate for mining ground will be granted by the government, then that estate is conveyed by the town site patent. And respondents having slept on their rights till such patent is granted, their only remedy remaining is to proceed to have the owners of the title under the town site patent decreed trustees for respondents, upon some of the grounds provided by law, if such grounds exist. The position which appellants occupy in this case is not unlike that of a claimant under an agricultural patent, when it might be afterwards discovered that the patented ground contained valuable mineral. If the fact had been shown in the land office at the time, an agricultural patent would have been refused. If the patent had been passed and issued without the claimant's knowledge that it contained mineral, there would be no doubt that the patentee would be entitled to all mineral contained in the ground. If the applicant knew of the mineral at the time of the application for patent, then this would be such fraud as would justify the government in instituting proceedings to set aside the patent, or the mineral claimants might proceed to have the patentee declared a trustee for them. But under such circumstances no one would think of procuring a mineral patent and then proceeding by action as in this case to eject the first patentee. Yet such

a course would be just as reasonable as the one pursued in this action.

The law prohibits the acquisition of mineral lands by agricultural claimants fully as explicitly and certainly as it does by town site claimants, and there is no reason why the same rule should not be invoked in construing a town site as in construing an agricultural patent.

And in the next place, by what right did the land office insert this clause in the town site patent? Would it not be just as appropriate to include in each patent granted to a pre-emption claimant a clause excepting all the lands described in section 2258 of the Revised Statutes. Such clauses have no place in patents. They are not intended to be inserted. The land office is established for the purpose of determining such questions as these, and it is the duty of this department to determine whether the land included in an application is of the character intended by law to be granted under such application. And the issuance of a patent is the judgment of the department that the land is of the character intended by law to be granted by such patents. And the land department cannot escape the responsibility of action by inserting a clause excluding such land as may in the future be discovered to be of a different character from that intended to be granted.

These positions are sustained by the following authorities: *Ah Yoo* v. *Choate,* 24 Cal. 562; *S. C.* 1 Min. Rep. 492; *Sac. Valley Rec. Co.* v. *Cook,* 61 Cal. 341; *Doll* v. *Meador,* 16 Cal. 295, 325; *Smelting Co.* v. *Kemp,* 104 U. S. 636; *Steel* v. *Smelting Co.* 106 U. S. 447; *Johnston* v. *Towsley,* 13 Wall. 72.

Had the land office acted in granting the mineral patent before the town site patent, we admit that nothing would have passed by the town site patent, unless the court should construe the law as we insist in the first instance, by deciding that it is the intention of congress to grant two separate interests or estates in the same ground.

If the court construes the clause in either patent to be an exception, we submit that the clause in the mining patent contains many more elements and essentials of an exception than the clause in the town site patent. The clause, so far as the findings show, reads "excepting and excluding," showing at least an intention to except and exclude all rights granted under the town site patent. These words are not contained in the town site patent, and no words used show an intention to except anything from the grant thereby made. This clause contains another essential of an exception which the clause in the town site patent does not, and that is the ground excepted in the mining patent is specifically described and bounded, not in the exception itself but by the patent of the United States to the town site authorities, issued two years before. In that patent the town site was particularly described and bounded, and when the Pawnbroker patent was issued the patentees as well as the government knew and could accurately ascertain what ground was excepted from the grant. And in this case the rule applies, *id certum est quod certum reddi potest.* *Greenleaf's Lessee* v. *Birth,* 6 Pet. 302.

The patent to the mining claim shows that the first difficulty which presented itself to the government was, that the ground applied for was included in the patent granted to the town site; and realizing such to be the case, it declined to make a further grant of the same premises to the respondents, but expressly excepted the rights granted in the town site patent from the mining patent. But, says counsel, such exception is not allowed or authorized by law, and consequently has no effect in the patent. Suppose the government had refused altogether to make a patent to respondents. Would they claim that the action of the land department was unwarranted, and that they could claim the same rights as if the patent had been issued? Could they come into court and claim that they had certain unrecognized and disputed rights, and

ask the court to act as if those rights were absolute? Could the court exercise the executive functions of government in adjudging them to have what the executive department had refused to grant? And yet if the clause in the mining patent contains the elements of an exception, it is nothing more than a refusal on the part of the government to grant the disputed premises. Whether that exception is right or wrong, whether it was authorized or unauthorized, it is the action of the land office upon matters within its jurisdiction and the court cannot review it. If respondents are dissatisfied with the action of the department, the proper place to pursue the remedy is in that department, and have this clause expunged. If the department refuses to expunge it, the courts cannot compel it. The evidence before the department may have justified it in inserting and retaining this clause; may have justified the refusal to grant the land to respondents; and that refusal to grant, the department has evidenced by the exception. This decision the courts cannot review, they cannot annul; because in the first place they have not the evidence and do not know upon what the judgment was founded, and in the second place they have not the power or jurisdiction over such matters.

The land office could have refused a patent to a part or all of the Pawnbroker lode claim, and when it does either, the court must construe its patent accordingly.

W. W. Dixon, for respondent.

I. On appeal from the judgment roll the judgment will not be reversed if the findings do not support it. There must be an absolute inconsistency between the express findings and the judgment. *Chumasero* v. *Vial*, 3 Mont. 376; *Mathews* v. *Kinsell*, 41 Cal. 512.

If no exception is taken for want of a finding the presumption is that all facts, necessary to sustain the judgment and not contained in the findings, were found.

*Henry* v. *Evarts*, 30 Cal. 425; *James* v. *Williams*, 31 Cal. 211; *Tewksbury* v. *Magraff*, 33 Cal. 237.

As there is no finding as to the time the Butte town site was settled, if this be material it must be presumed to have been subsequent to the Pawnbroker location.

So as to the question whether or not the possession of the surface ground was necessary for the working of the Pawnbroker lode. This matter was not pleaded as a defense — no finding upon it was asked; and if it was in any way material, the presumption must now be that it was proved and found that the whole surface was necessary.

The burden of proof was not upon respondent. Under a patent for a mining claim it is not necessary to prove that the surface was necessary to work it. *Abbott* v. *Primeaux*, 16 Nev. 361.

II. The width of a mining claim is not regulated necessarily by local rules or customs. The laws of the state or territory and of the United States also govern it. Secs. 2319, 2320, U. S. R. S.

If appellants' theory as to this point were correct, in the absence of local mining laws, no locator could acquire any right to surface ground, and the grant in section 2319 would be practically rendered useless by lack of local legislation. But respondent holds that this question does not arise in this case.

The third finding of the court (p. 92, Transcript) is that the Pawnbroker lode mining claim was at the time of the issuance and date of the town site patent, and before and since, a valid mining claim and possession held under existing laws of congress, by the grantors of respondent; and in the agreed statement of facts (p. 52, Transcript) it is admitted that the location and claim of the Pawnbroker lode claim was in all respects regular and according to the laws of the United States and the territory of Montana, and that everything necessary was done to make the same a valid mining location and claim at that time.

In the teeth of these uncontradicted findings and admissions, and in view of the fact that the act of congress itself (section 2320) provides that no mining regulation shall limit surface ground to less than twenty-five feet on each side of the center of the vein, it must be somewhat difficult to assent to appellants' claim that the Pawnbroker location included no surface ground whatever.

III. Appellants claim that whatever rights may have been acquired by the Pawnbroker location were merged in the patent; that is, in effect, that a mining locator has less right to the land after a patent than before one. This would be a curious construction. The result would be that whereas under a location alone a party acquired the exclusive right to the possession and enjoyment of all the surface included within the lines of his location, he might lose this by obtaining a patent. As long as he held under his location only, he was safe; but if he procured a patent he could not go back of its date, and any right adverse to him intervening between his location and patent would have priority of the patent. Certainly if this is the law a miner who gets a patent gets nothing, but risks losing all he had under his location.

In fact, however, there is but one way of acquiring any right or title to mineral lands of the United States. This is by location, which is the foundation of all right. It gives the exclusive right to the possession and enjoyment, and also the right to purchase from the government upon the terms provided by law. The first step in an application for patent is proof of location. It is because the applicant has made the first and best location that the law gives him the patent. The law gives the miner certain rights by location, and in pursuance of and upon that location, gives him the title by patent. The patent is only a confirmation and assurance of his right by location, and in such case relates back to the inception of the right, which was the location. A patent relates back to the location. *Eureka Richmond Case,* 4 Sawy. 317;

*Shepley* v. *Cowan,* 91 U. S. 338; *Heydenfeldt* v. *Daney Co.* 93 U. S. 634; *Taylor* v. *Brown,* 5 Cranch, 234; *Stark* v. *Starrs,* 6 Wall. 412; *Ross* v. *Borland,* 1 Pet. 655; *Smelting Company* v. *Kemp,* 104 U. S. 647. And the patent is evidence that all necessary prerequisites have been performed. *Polk's Lessee* v. *Wendall,* 9 Cranch, 87; *S. C.* 5 Wheat. 293. And any defects in preliminary steps to procure the patent required by law are cured by patent. *Hufnagle* v. *Anderson,* 7 Wheat. 212. And in a trial at law no inquiry can be made as to regularity of proceedings upon which patent was granted. *Stringer* v. *Young,* 3 Pet. 320.

A patent has a double operation in the legislation of congress — it is a conveyance by the government of its title; but where it is issued upon the confirmation of a claim of a previously existing title it is documentary evidence of that title, or of such equities respecting the claim as justify its recognition. A legislative confirmation of a claim to land is a recognition of the validity of such claim, and operates as effectually as a grant or quitclaim from the government. *Longdean* v. *Hanes,* 21 Wall. 521. See, also, *Marsh* v. *Brooks,* 8 How. 223.

In the case at bar we claim that the patent was only a confirmation of the right previously acquired by location. Merger is not favored in law, and will not be held to have taken place against the intention of parties or to their injury. Really there could have been no merger in this case. The town site patent reserved all valid mining claims, and the Pawnbroker was such a mining claim, and was reserved and conveyed by the lode patent, which gave absolute title to it, independent of when it was located.

IV. In order to correctly apply the law which should govern this case it is important to refer to some well established principles as to patents for land from the government and their construction and effect. The issuing of a patent is a mere ministerial act. 3 Washb. on

R. P. p. 192; *Stoddard* v. *Chambers*, 2 How. 284; *United States* v. *Stone*, 2 Wall. 535. And testimony to show want of authority in officer who issued patent is admissible at law. ' *Sherman* v. *Buck*, 93 U. S. 209. And see *Winter* v. *Crommelin*, 18 How. 87. And the act of the register in issuing a warrant for land is ministerial and not judicial. *Brush* v. *Ware*, 15 Pet. 93.

A patent for land previously granted or reserved from sale is void — and this may be shown at law; and so, also, where the officer had no authority to issue the grant. *Patterson* v. *Winn*, 11 Wheat. 380; *New Orleans* v. *United States*, 10 Pet. 662; *Reichart* v. *Phelps*, 6 Wall. 160; *Best* v. *Polk*, 18 Wall. 112; *Morton* v. *Nebraska*, 21 Wall. 660; *Stoddard* v. *Chambers*, 2 How. 284; *Polk, Lessee,* v. *Wendell*, 7 Cranch, 99; *S. C.* 5 Wheat. 293; *United States* v. *Tichner*, 12 Fed. Rep. 415; *Smelting Co. v. Kemp*, 104 U. S. 644; Copp's Mineral Land Laws, p. 282.

A condition in a patent not authorized by law is void. 3 Washb. on R. P. p. 192; *Stark* v. *Starrs*, 6 Wall. 413. And if a patent is broader than the law it is void to that extent. *Wolfley* v. *Lebanon M. Co.* 4 Col. 112. As to reservations or conditions in patents, see decision of Secretary Teller, July 10, 1882 (Rico town site); and Copp's Mineral Land Law, pp. 154 and 202, as to exceptions, etc., put in town site patents, showing that the land department, by inserting these exceptions, intended to leave matter to the courts, etc. See, also, Weeks on Mineral Lands, sec. 222, and Secretary Teller's decision (*Papina* v. *Alderson*), Reporter, April, 1883, p. 193.

In an action of ejectment, where both parties claim the premises in controversy under patents from the United States, the inquiry of the court must extend to the character of the original grants, and the controversy can only be settled by determining which of these two gave the better right to the premises. *Henshaw* v. *Bissell*, 18 Wall. 255. (This was a case of two patents, with reservations. The prior one was sustained.) See, also,

*Stark* v. *Starrs*, 6 Wall. 402. (This was a town site case; two patents, with 'mutual reservations, etc., and the right was examined and the reservation in one patent held void.) See, also, *Wirth* v. *Brannon*, 98 U. S. 118; *Bagnell* v. *Broderick*, 13 Pet. 451; *Hayner* v. *Stanley*, 13 Fed. Rep. 225.

Where a patent reserved all valid adverse claims, a second patent was held good. *Maguire* v. *Taylor*, 8 Wall. 650.

Where a patent contained a reservation authorized by statute, it was said by the court that this reservation authorized a judicial inquiry into the merits of the opposing claims, and also that even if the reservation was not expressed in the patent, it would still be subject to a similar reservation by force of the statute. *White* v. *Cannon*, 6 Wall. 443.

V. The reservation or exception in the town site patent in this case was one made by law, and the patent would have had no different or greater effect had it been omitted. Section 2392, U. S. Revised Statutes, provides that "no title shall be acquired under the foregoing provisions of this chapter (relating to entry and purchase of town sites) to any mine of gold, silver, cinnabar, or copper; or to any valid mining claim or possession held under existing laws." The section is as positive as it could well be made. "No title shall be acquired." And this not only to any mine (and in this case the Pawnbroker was found to be a mine), but not to any valid mining claim or possession held under existing laws. The Pawnbroker is found here to have been, long before the entry of the town site, a valid mining claim, held under existing laws. A mine may be taken, in a limited sense, to mean the vein or lode. A mining claim is something more, and it embraces surface, and is defined in section 2320. "A mining claim is a parcel of land containing precious metals in its rock or soil." *Smelting Co.* v. *Kemp*, 104 U. S. 649.

The Pawnbroker claim was duly located under the act of congress of May 10, 1872, which gave the locators the exclusive right to the possession and enjoyment of all surface included within the lines of their location. Sec. 2322, U. S. R. S.

A location perfected has the effect of a grant by the United States of the right of present exclusive possession. *Belk* v. *Meagher*, 104 U. S. 285.

In patents for lode claims no reservations, exceptions or conditions are authorized by law, except those provided for in sections 2340 (as to water rights, etc.), 2338 (as to easements for working, etc.), and 2339 (also as to water rights). No reservation as to town site rights is made or authorized by law.

By what authority of law, then, were the reservations or exceptions of town lots, streets, etc., inserted in the Pawnbroker patent? None can be found; and as they were unauthorized they are simply void.

It is a curious and dangerous state of affairs if the land officers can impose restrictions or conditions upon the sale of the public lands at their own pleasure, and without sanction of law, and that their acts in doing so cannot be questioned!

But appellants claim that section 2386 restricts the miner to the necessary use of his vein. This matter is alluded to above, and, as respondent claims, cuts no figure here because nothing is shown in the record as to what use was necessary, and the court, to support the judgment below, must presume that this necessary use to the extent of the whole claim was found. See authorities above referred to in first division of this brief.

But aside from this last point, consider this section 2386. It was enacted in 1865 (see U. S. Statutes at Large, ch. 107, sec. 2, vol. 13, p. 530). At that time congress had never, by legislation, recognized any right in third persons to the public mineral domain. The section shows itself that it was adapted only to the then exist-

ing state of things, for it provides that nothing contained in the section shall be so construed as to recognize any color of title in possessors for mining purposes as against the United States.

In 1866 a new system was inaugurated. The public mineral lands were declared open to exploration, occupation and purchase. And this was a grant to those who complied with the conditions of the law. In this condition of affairs section 2386 was not consistent with the law of 1866, and hence section 2392, which took effect March 2, 1867, was enacted. It was inconsistent with section 2386 and virtually repealed it. And if section 2386 was not repealed by section 2392 it must necessarily have been by the mining act of 1872, which expressly gave the locator the right to the exclusive possession of the surface. All these sections were inserted in the revision of the United States statutes, but where they are inconsistent we must look back of the revision to the dates of their original passage, and the object and intent of the law-making power.

In *Mobile Savings Bank* v. *Patty,* 16 Fed. Rep. 751, it was held that where two contradictory provisions are embraced in a codification of laws, the one latest in date will be held to repeal the other and to be in force. And see *Oates* v. *National Bank,* 100 U. S. 239.

It must also be noted that by section 2318, United States Revised Statutes: "In all cases lands valuable for minerals shall be reserved from sale, except as otherwise expressly directed by law."

VI. It is claimed by appellants that the land department has, or should have, passed upon and settled conclusively the relative rights of the parties in this action, upon their respective applications for patents.

But the record and findings and agreed facts in the case show that the land department never did pass upon or adjudicate these matters, or undertake to do so. The lode claimants did not adverse the town site application,

and the town site claimants did not adverse the lode application. And why should the lode claimant have adversed? The law declared, and the town site patent contained a provision, that no title should be acquired by it to any valid mining claim. The lode owner had such a claim, and the law and the patent protected him as effectually as if his claim had been excepted by special mention. But on the other hand, the town site claimants should have adversed the lode application, and have lost their rights by failure to do so. No law authorized any town site rights to be excepted from the lode patent, and the exceptions made in the patent by the land department were therefore void. The town site claimants should have asserted their rights, if they had any, when the lode claimant applied for patent.

But under what provision of law is it that the land department has authority to decide a question like this? Or if it has, and it mistakes the law, will it be claimed that the courts cannot correct such mistake?

If land officers err in construing the laws, their rulings may be reversed or annulled by the courts when a controversy arises between private parties, founded on their decision; but for mere error in judgment upon the weight of evidence in a contested case, the only remedy is by appeal from one officer to another of the department. *Shepley* v. *Cowan*, 91 U. S. 330; *Smelting Co.* v. *Kemp*, 104 U. S. 636, and *Steele* v. *Smelting Co.* 106 U. S. 447, will be found, upon examination, not to conflict with these views.

If their rights were adjudicated in the land department why did it insert reservations in both the patents? And does not this case come exactly within the cases above referred to in 18 Wall. 255; 6 Wall. 402, and others? The question here being, which of the two patents conveyed the best right.

The mineral land act provides for an opposing claimant adversing an application for patent, and indeed re-

quires him to do so; but where in the town site act is there any requirement for adverse claimants to make known their claims, or any provision for adjudicating them in the land department if they do so? The town site claimants could and should have asserted any rights they claimed in the land department, when the lode claimant sought to obtain a patent; but the law seems not to provide any means or point out any way for the lode claimant to contest the town site entry in that department. Besides, by the town site law and patent, no title was conveyed to any valid mining claim, whereas in the lode patent no reservation of town site rights was authorized.

VII. For a case where the questions involved were substantially the same as here and were well discussed and considered, and the decision of the court was in accordance with the law as here claimed, respondent refers the court to *Hawke et al.* v. *Deffenbach et al.*, decided in the district court of Dakota territory for Lawrence county (Black Hills), August, 1883, Church, Associate Justice of Dakota. A copy of this decision, as published in the local papers, is herewith submitted to the court.

Respondent claims that, upon the findings and admissions in the case, the court below could not, under the law, have rendered any other judgment than that for the plaintiff, and that the judgment so rendered should be affirmed.

WADE, C. J. This is an action in the nature of ejectment, in which the respondent seeks to recover the possession of a certain mining claim location known as the Pawnbroker lode claim, situate in Summit Valley mining district, Silver Bow county, claimed by appellants as a part of the Butte town site. There was but little controversy at the trial as to the facts, which, in substance, are as follows: That the Pawnbroker mining claim was located and claimed on the 16th day of November, 1875,

on what was then the public and unappropriated mineral
lands of the United States; that at the time of such loca-
tion and claim the grantors of plaintiff had discovered,
within the limits of said claim, a vein or lode of quartz
in place, containing silver and other valuable deposits,
with at least one well-defined wall; that at the time of
such location the same was distinctly marked on the
ground, so that its boundaries could be readily traced,
and a notice of the claim posted on the ground, and that
within twenty days after said discovery and location a
declaratory statement, in due form of law, was filed and
recorded in the proper county, and a duplicate thereof
posted at discovery shaft on said claim at the time of said
location; that said location and claim were made under
the act of congress of May 10, 1872, and the laws of the
territory; that there was not, at the time of said location
and claim, or since, any local rules, laws, customs or
regulations of miners in force in Summit Valley mining
district; and that the location and claim of the Pawn-
broker claim was, in all respects, regular and according
to the laws of the United States and the territory of
Montana, and everything necessary was done to make
the same a valid mining location and claim at that time;
that the locators and their grantees, as to work on said
claim, and in all other respects, complied with the law
so as to preserve whatever title to said claim was ac-
quired by said location; that in the month of May, 1878,
an application, in due form of law, for a patent was
made for said Pawnbroker mining claim under and by
virtue of the location thereof made November 16, 1875;
that notice of said application was given as provided by
law; that no protest or adverse claim was made thereto;
that upon said application, a patent, dated January 15,
1880, was issued for said Pawnbroker mining claim,
which is the patent mentioned in the answer and replica-
tion, and under which respondent claims; that said
patent contained a clause "excepting and excluding from

said patent all town site property rights upon the surface; and all houses, buildings, lots, blocks, streets, alleys or other municipal improvements on the surface of said Pawnbroker mining claim;" that the proceedings upon the application for the patent for the Butte town site mentioned in the answer and replication were in due form of law, and that no protest against, or adverse claim to, any part of the Pawnbroker claim which was embraced in said town site patent was made against, or to, said application by any one claiming title to the Pawnbroker claim; that the defendants have and own all the right and title which was acquired by law or could be legally conveyed to the probate judge under the patent to the probate judge for the Butte town site, dated September 26, 1877, in and to all those portions of the surface ground of the Pawnbroker mining claim which are embraced within the limits of said town site patent; that said patent contains in it a provision as follows, to wit: "No title shall be hereby acquired to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession held under existing laws of congress;" that the Pawnbroker claim described in the complaint therein was, at the time of the issuance and date of said town site patent, and before and since, a valid mining claim and possession held under existing laws of congress, to wit, under the act of May 10, 1872, and the laws of Montana territory, by the grantors and predecessors in interest of the plaintiff.

Under this state of facts, was any title or right of possession to the Pawnbroker mining claim, or any part thereof, conveyed or passed by the town site patent, or by any deed made by the probate judge in pursuance thereof? What are the rights of the respective parties to the land and premises in dispute? These rights must be determined by an interpretation of the acts of congress in relation to the acquisition of title to the public mineral lands and to town sites situate on the public

lands, which statutes are as follows: R. S. U. S. sec. 2386. "When mineral veins are possessed, which possession is recognized by local authority, and to the extent so possessed and recognized, the title to town lots to be acquired shall be subject to such recognized possession and the necessary use thereof; but nothing contained in this section shall be so construed as to recognize any color of title in possession for mining purposes as against the United States." Section 2387 provides for the entry of town sites on the public lands in trust for the use of the occupants thereof. Section 2392. "No title shall be acquired under the foregoing provisions of this chapter to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession held under existing laws."

Section 2318. "In all cases lands valuable for minerals shall be reserved from sale, except as otherwise expressly directed by law."

Section 2319. "All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States, and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

Section 2320 regulates the size of mining claims, and provides, among other things, that no claim shall extend more than three hundred feet on each side of the middle of the vein at the surface, nor shall any claim be limited, by any mining regulation, to less than twenty-five feet on each side of the middle of the vein at the surface.

Section 2322 provides that the location of all mining locations hereafter made on any mineral vein, lode or

ledge "shall have the exclusive right of possession and enjoyment of all surface ground included within the lines of their locations."

Section 2324 regulates the manner of locating, recording, marking the boundaries of the claim, and the amount of work necessary to hold possession of the claim.

Section 2325 points out how a patent to a mining claim may be obtained, and section 2326 provides for filing an adverse claim and the proceeding to determine the right of possession to the ground in dispute.  These are parts of our system of pre-emption laws providing for the sale and acquisition of title to the public mineral lands and other lands belonging to the United States, and as they concern the same subject-matter they are *in pari materia*, and must be construed together, and effect must be given to each section and provision of the law, so far as possible.  Prior to 1866 it had been the settled policy of the government, in disposing of the public lands, to reserve the mines and mineral lands for the use of the United States.  Prior to that date the uniform reservation of mineral lands from survey, from sale, from pre-emption and from all grants, whether for railroads, public buildings or other purposes, was the fixed and settled policy of the government in relation to such lands. *Mining Co.* v. *Consolidated Mining Co.* 102 U. S. 167; *United States* v. *Gratiot,* 14 Pet. 526; *Morton* v. *Nebraska,* 21 Wall. 660.

Prior to that date it was impossible for an individual to acquire title to the mineral lands.  Though the government had in various ways recognized the possessory rights of miners on the public mineral lands, and their rules and regulations in relation thereto, yet it was always careful not to part with its title.  The act of 1865, section 2386, above quoted, was a recognition of both the possessory rights of the miners on the public mineral lands, and the authority and validity of the local rules and regulations in relation thereto, while yet the govern-

ment had no intention of parting with its title to such lands. This statute must be construed with the others bearing upon the same subject; but in arriving at its true meaning, and to give to it its proper effect, account must be taken of the object sought to be attained by its passage, and the situation, conditions and circumstances surrounding the subject-matter at the time. If this statute was designed, as it seems to have been, to protect the mere possessory rights of miners on the public mineral lands, as those rights were defined by local authority, while the government had no intention of parting with its title, and while the miners were technically trespassers upon the public domain, under other conditions and surroundings, and in the presence of other rights and interests that would arise where the government had provided by law for the absolute sale and disposal of the mineral lands, and had parted with its title in pursuance thereof, the statute might have no application. It did not contemplate a condition of things where the government had granted to the miner the right of possession and the right to purchase the mineral lands he occupied in pursuance of law. But though the government had made no sale and the miner no purchase, and held his mineral vein by mere possession under local authority, still this statute protected such possession as against the title to town lots to be acquired, and subjected the lots to the necessary use of the mineral vein. And in so protecting the possession of the miner, so far as it went, the statute is not in conflict with any later statute on the same subject. And this brings us to the consideration of our system of laws in relation to the sale and purchase of the public mineral lands. Section 2318, above recited, provides that in all cases lands valuable for minerals shall be reserved from sale, except as otherwise expressly directed by law. On the 26th day of July, 1866, such express direction was given, and congress enacted a complete system for the sale and other

regulation of its mineral lands, which system was amended and perfected by the act of May 10, 1872, by the terms of which all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, were declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, under such regulations as may be prescribed by law, and according to the local customs and rules of miners, so far as the same are applicable and not inconsistent with the laws of the United States. By the terms of this section (2319), not only the mineral deposits are declared free and open to exploration and purchase, but the land in which they are found is declared open to occupation and purchase to the extent or amount as defined in the statute, and the land so defined constitutes a mining claim under the law when the same is properly located. The purpose of congress in enacting this statute was to sell its mineral lands. This land is declared open to occupation and purchase.

This means that the absolute title may be acquired therein. This language will not bear the interpretation that the government intended thereby to sell to the purchaser of a mining claim a mining easement therein, or simply the right to occupy and possess the mining claim for the necessary use of the mineral vein. The right to occupy and to purchase means the right to acquire the full title. Under the statute of 1865, such a title could not be acquired; and the only right the miner had was possession, and the necessary use of his vein; and this right the statute protected. But this statute becomes inapplicable under a system of laws where the government proposes to sell its mineral lands upon certain terms and conditions, and lets the purchaser into possession in anticipation of an absolute conveyance when the terms and conditions are performed. The amount of land which may be taken and purchased, by the discovery therein of a vein or lode of valuable mineral deposits, may equal

fifteen hundred feet in length along the vein or lode, and
may extend three hundred feet on each side of the middle
of the vein or lode at the surface, but shall not be less
than twenty-five feet on each side of the middle thereof
by virtue of any mining rules or regulations.    If there
are no mining rules on the subject and no statute of the
territory in relation thereto, then the act of congress
must control as to the width of the mining claim.    The
width of the claim does not depend upon the existence
of local rules on the subject.    If it did, in the absence
of any rules, there could be no location at all.    Having
discovered a vein or lode and made a location thereon
according to law, the locator then becomes entitled to
the exclusive right to the possession and enjoyment of
all the surface ground included within the lines of his
location.    This is the express provision of the statute
(section 2322), and is in harmony with section 2319,
which declares that the ground in which the mineral de-
posit may be found shall be open to occupation and
purchase.    The right to acquire the full title, which at-
taches to and accompanies every valid location of a
mining claim, ought to be, and is, followed by the right
to the exclusive possession and enjoyment of the soil of
such claim.    This right to the exclusive possession and
enjoyment of the surface ground does not mean the right
to use it for mining purposes, only.    It does not create a
mining easement or right in the ground; but, being at-
tended by the right to purchase, it means an absolute
sale when the terms and conditions are complied with.
This statute is a pre-emption law, and by the location of
a mining claim under it, the grounds included within the
boundaries of the location are just as much withdrawn
from the public domain as the fee is by a valid grant
from the United States under the authority of law, or
the possession under a valid and subsisting homestead or
pre-emption entry.    This statute is an offer to sell the
public mineral lands by the owner thereof, and the locator,

by making a location thereon, accepts the offer, thereby closing the contract of purchase, and the purchaser becomes entitled to a conveyance when he has complied with the terms of the contract. The rights accruing by this offer and acceptance exclude the theory that the locator of a mining claim acquires the right merely to the possession of the surface ground of his claim for mining purposes only, and that the ground is subject to purchase by other persons for other purposes, subject only to the necessary use of the mine. The supreme court of the United States, in the case of *Belk* v. *Meagher,* 104 U. S. 279, by Chief Justice Waite, in language that cannot be mistaken, says: "A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold and conveyed, and will pass by descent. *Forbes* v. *Gracy,* 94 U. S. 762. There is nothing in the act of congress which makes actual possession any more necessary for the protection of the title acquired to such claim by a valid location, than it is for any other grant from the United States. The language of the act is, that the locators 'shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their location,' which is to continue until there shall be a failure to do the requisite amount of work within the prescribed time. Congress has seen fit to make the possession of that part of the public lands, which is valuable for minerals, separable from the fee, and to provide for the existence of an exclusive right to the possession while the paramount title to the land remains in the United States. . . . The right to the possession comes only from a valid location; consequently, if there is no location there can be no possession under it. Location does not necessarily follow from possession, but possession from location. A location is not made by taking possession alone, but by working on the ground, recording, and doing whatever else is required for that purpose, by the acts of congress

and the local laws and regulations. . . . On the 19th of December, the date of Belk's relocation, the right to the possession of this property was just as much withdrawn from the public domain as the fee is by a valid grant from the United States under the authority of law, or the possession by a valid and subsisting homestead or pre-emption entry. As the United States could not, at the time, give Belk the right to take possession of the property for the purpose of making his location, because there was an existing outstanding grant of the exclusive right of possession and enjoyment, it would seem necessarily to follow that any tortious entry he might make must be unavailing for the purpose of a valid location of a claim under the act of congress. A location to be effectual must be good at the time it is made. When perfected, it has the effect of a grant by the United States of the right of present and exclusive possession."

If, then, the location of a mining claim has the effect of a grant by the United States to the locator of the right to the present and exclusive possession of the ground located, it follows that there could not be a like grant of the same property to any other person. There would be no room for a further grant, for the government would have nothing further to convey. After such a grant, which also carries with it the right to purchase the absolute title, the land described within the grant ceases to be public land, and the pre-emption laws, and laws providing for the sale and purchase of the public domain, have no application to it, or effect upon it. It is just as much withdrawn from the public domain as the fee is by a valid grant from the United States under authority, or the possession by a valid and subsisting homestead pre-emption entry. It is already sold and becomes private property, which may be disposed of at the will of the owner. And so land thus sold and disposed of is not affected one way or another by the subsequent acts of congress providing for the entry of town sites upon the public lands.

The application and entry for town sites is only authorized on the public lands (section 2387, *supra*); and after the lands have been granted and sold, as in the case of a valid mining location and claim, the entry of a town site does not affect such claim, though situate within the boundaries of the town site. The reason is that the mining claim and ground has already been granted and sold, and has thereby ceased to be a portion of the public lands, for which only the town site entry could be made; and for a further reason, the town site act expressly provides (section 2392, *supra*) that no title shall be acquired, under the provisions of said act, to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession under existing laws. If no title can be acquired to a mining claim or possession by virtue of the town site act, then the defendants herein, who claim by virtue of a subsequent town site entry and patent, cannot disturb the exclusive possession of the plaintiff, who claims by virtue of a prior valid location and patent of the mining claim in question.

In *Steel* v. *Smelting Co.* 106 U. S. 450–459, the supreme court of the United States says: "The acts of congress relating to town sites recognize the possession of mining claims within their limits and forbid the acquisition of any mine of gold, silver, cinnabar or copper within them, under proceedings by which title to other lands there situate is secured, thus leaving the mineral deposits within town sites open to exploration, and the land in which they are found to occupation and purchase, in the same manner as such deposits are elsewhere explored and possessed, and the lands containing them are acquired. Whenever, therefore, mines are found in lands belonging to the United States, whether within or without town sites, they may be claimed and worked, provided existing rights of others, from prior occupation, are not interfered with. . . . To such claims (mining claims), though situated within the limits of what may

be termed the site of the settlement or new town, the miner acquires as good a right as though his discovery was in a wilderness, removed from all settlements, and he is equally entitled to a patent for them."

The "existing rights of others," here spoken of, means prior rights by occupation under local rules, before any title has passed from the government. When such rights exist the mining location is subject to them, and the land department ascertains by proof if a patent to the mining claim can issue under the law. But in a case where the mining location is the first occupation and the first purchase of the ground from the government, there are no prior existing rights to be protected, and the locator purchases what may ripen into a full and complete title.

It is further declared in the case above referred to, that "land embraced within a town site on the public domain, when unoccupied, is not exempt from location and sale for mining purposes." That is to say, upon the unclaimed lands within the town site, before the title has passed from the probate judge, who, as to such lands, holds the same in trust for the United States, a mining claim may be located thereon for the reason that such lands have not been sold; and no one has before then acquired any interest therein. But no such considerations arise in a case like the one at bar, where the ground in question was located as a mining claim under existing laws, and occupied, held and possessed as such, long before the entry of the town site. The town site application and entry not being applicable to, or in any manner affecting, a prior mining claim, located according to law, it follows that there was no duty or obligation upon the part of the mining claim owners to file an adverse claim to the entry of the town site. The law did not require any such action on their part, for they had no adverse claim. Their mining claim was excluded from the operation of the town site act; and they did not pretend to claim or own any interest in the public lands within the town site bound-

aries. Hence there was nothing upon which they could file an adverse claim. They held their mining claim by virtue of a perfected and valid location and purchase, and so far as the ground included within its boundaries was concerned, they were under no obligations to take any notice of subsequent pre-emption laws, making sale or disposing of other public lands.

We are next to consider the rights of these parties in view of their respective patents, and the effect of the reservations and exceptions they contain. The Pawnbroker mining claim and location was made and perfected on the 16th day of November, 1875, and a patent therefor was issued on the 15th day of January, 1880.

The patent to the probate judge, for the town site, was issued on the 26th day of September, 1877. The town site patent contained the following clause: "No title shall be hereby acquired to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession held under existing laws of congress." The mining claim patent contained a clause: "Excepting and excluding from said patent all town property, rights upon the surface, and all houses, buildings, lots, blocks, streets, alleys or other municipal improvements on the surface of said Pawnbroker claim."

It is evident from these reservations and exceptions that the land department never attempted to adjudicate between these parties as to which one of them was entitled to the possession of the surface ground of the mining claim. An attempt is made to exclude the surface ground of mining claims from the operation of each patent. Notwithstanding these patents, the ownership of this surface, whether it belongs to the mining claim or to the town lot, subject to a mining easement therein, remains to be adjudicated.

It is contended, on behalf of appellants, that the patent to the probate judge, of the town site, conveyed to him all the premises included within its boundaries, as well

mining claims as other lands, and that the clause declaring that no title should thereby be acquired to any valid mining claim or possession held under existing laws of congress, was neither an exception or reservation, but that it is notice to the patentee that the lands conveyed by the patent are subject to the prior rights of the locators of valid mining claims therein, inserted in the patent for the protection of the government in the event the claimants under the mining locations should oust the claimants under the town site.   In support of this view, the following authorities are referred to: *Bryan* v. *Forsyth*, 19 How. 334; *Meehan* v. *Forsyth*, 24 How. 175; *Gregg* v. *Forsyth*, 24 How. 179; *Dredge* v. *Forsyth*, 2 Black, 563; 1 Miller, 731; 4 Miller, 52–58.

In the case of *Meehan* v. *Forsyth*, there was an act of congress confirming certain claims to lots in the village of Peoria, in the state of Illinois, and the surveyor of the public lands was directed to survey the lots.   Before the survey, Ballance made an entry of the quarter section of which the lot in controversy was a part, and a patent was issued to him by which the United States granted to him and to his heirs, subject to the rights of any and all persons claiming under the act of congress aforesaid.   It was held that the saving clause was designed to exonerate the United States from any claim of the patentee in the event of his ouster by persons claiming under the act of congress, and cannot be construed as separating any lots or parcels of land from the operation of the grant; and that the patent does not impose upon the patentee any duty to recognize these claims, but only requires him to accept the title of the United States with knowledge that such claims exist, and that they do not intend to deny or to destroy them, nor to defend his title against them.

There had been no survey of the lots and no reservation of them from sale as a part of the public lands at the time.   Ballance made his entry for the quarter sec-

tion and received his patent. Whether the lots would ever be surveyed and designated so that the claimants could assert their title, or whether they would assert title after a survey had been made, was unknown, and so it was held that the patent conveyed a fee-simple title. Says Justice Clifford, in *Dredge et al.* v. *Forsyth*, 2 Black, 569, which is a similar case to that of *Meehan* v. *Forsyth:* "When the patent under which defendants claim was issued, no survey of any lots granted to the inhabitants or settlers in the village of Peoria had been made. Those persons, therefore, held but an inchoate right, which must first be surveyed and designated before the right granted to them would supersede the title acquired under the defendants' patent. They might never make any claim, and in that event the other title would prevail. Consequently, this court held, in *Bryan et al.* v. *Forsyth*, 19 How. 338, that, subject to that contingency, the patentee, under whom the defendants claim, took a title in fee till 1840, when the title to the village lots was, by survey and designation then made, ripened into a better title."

And so it was only the lack of survey, designation and claim by the lot-owners that caused the court to hold the quarter section patent the better title. If the lots had been surveyed and designated, "the right granted to them would supersede the title acquired under the patent." Suppose these lots had been a mining location previously granted and sold by the government to the locator, valid in every way, and distinctly marked and recorded, then, according to this authority, the mining claim title would supersede that of the town site patent. But suppose again that congress had declared that title to these lots should never be acquired by virtue of any quarter section entry for patent, and had provided by law the manner in which the lot-owners might procure a conveyance of the government title, could it be then held that the patent conveyed a fee-simple title to the lots

when they were expressly reserved from the granted premises? We do not think a patent good for anything that attempts to convey land that the law declares shall not be conveyed by patent.

In these Peoria town lot cases there was no question, and could have been none, as to the right or authority to issue the patent for the quarter section. No one could have objected, or set up an adverse claim. The lots had not been surveyed. There was nothing upon which the lot claimants could base a claim. The patent was issued in pursuance of law and not in violation of the law. The land department had the right to issue it, and the patentee to receive it. He took it subject to the right of the lot-owners or claimants, if they ever should make and sustain a claim. But this case is to be distinguished from one where the patent issues without authority of law, and certain grounds are included within its boundaries, in express violation of the statute. The land department is only authorized to issue patents to the probate judge for town site purposes on the public lands not previously granted and sold or reserved from sale. More than this: the act authorizing the conveyance of town sites to the probate judge forbids the land department to include in the town site patent any mine, mining claim or possession. If the land department had no authority to issue the patent, or if it was issued for land previously granted or reserved from sale, the patent is so far void. In the case of *Morton* v. *Nebraska, supra,* the supreme court of the United States says: "It has been repeatedly decided by this court that patents for lands which have been previously granted, reserved from sale, or appropriated, are void. The executive officers had no authority to issue a patent for the lands in controversy, because they were not subject to entry, having been previously reserved, and this want of power may be proved by a defendant in an action at law."

In *Steel* v. *Smelting Co., supra,* the same court says:

"If the lands were never the property of the United States, or if no legislation authorized their sale, or if they had been previously disposed of, or reserved from sale, the patent would be inoperative to pass the title, and objection to it could be taken on these grounds at any time and in any form of action. In that respect, the patent would be like the deed of an individual, which would be inoperative if he never owned the property, or had previously conveyed it, or had dedicated it to uses which precluded its sale." *Smelting Co.* v. *Kemp*, 104 U. S. 644; *Patterson* v. *Winn*, 11 Wheat. 380; *United States* v. *Tickner*, 12 Fed. Rep. 415; *New Orleans* v. *United States*, 10 Pet. 662; *Reichart* v. *Phelps*, 6 Wall. 160; *Best* v. *Polk*, 18 Wall. 112; *Stoddard* v. *Chambers*, 2 How. 284; *Polk's Lessees* v. *Wendell*, 9 Cranch, 99.

Before the patent for the town site had issued, the Pawnbroker mining claim had been granted and sold, and thereby withdrawn and taken from the public lands, and the executive officers therefore had no authority to include in the town site patent the lands so disposed of; and if the town site patent includes such lands and the fee thereof, as appellants contend, it is, so far and to that extent, void.

It is claimed, however, that town site rights are excepted from the Pawnbroker patent, and, therefore, that such patent does not convey to the grantees therein any of the surface ground of the Pawnbroker mining claim. If this exception was authorized by law, it is valid; but if not authorized, and the executive officers had no authority to make it, it is void and does not affect the grant.

A patent relates back to the right. A patent for a mining claim relates back to the location, and is the consummation of the purchase then made. No unauthorized act of the land officer in issuing the patent can defeat this title. In *Stark* v. *Starrs*, 6 Wall. 418, the supreme court of the United States says: "The patent relates back to the inception of the right of the patentee, so far

as it may be necessary to cut off intervening claimants."
The patent being but confirmatory of the title by loca-
tion, the patentee obtains the same right under it that he
would have obtained if the patent had issued immediately
after the location and compliance with the terms of the
statute.    In the *Eureka Case,* 4 Sawyer, 317, the court
says:    "All these patents are founded upon previous
locations taken up and improved according to the cus-
toms and rules of miners in the district.    Each patent is
evidence of a perfected right in the patentee to the claim
conveyed, the initiatory step for the acquisition of which
was the original location.    If the date of such location be
stated in the instrument or appear from the record of its
entry in the local land office, the patent will take effect
by relation as of that date, so far as may be necessary to
cut off all intervening claimants, unless the prior right of
the patentee, by virtue of his earlier location, has been
lost by failure to contest the claim of the intervening
claimants as provided in the act of 1872.    As in the sys-
tem established for the alienation of the public lands, the
patent is the consummation of a series of acts having for
their object the acquisition of the title, the general rule
is to give to it an operation by relation at the date of the
initiatory step, so far as may be necessary to protect the
patentee against subsequent claimants of the same prop-
erty.    As was said by the supreme court in the case of
*Shipley* v. *Cowan,* 91 U. S. 338, where two parties are
contending for the same property, the first in time in the
commencement of proceedings for the acquisition of title,
when the same are regularly followed up, is deemed to
be the first in right."   *Smelting Co.* v. *Kemp,* 104 U. S.
647; *Ross* v. *Bolard,* 1 Pet. 655; *Hydenfeldt* v. *Daney Co.*
93 U. S. 634; *Tayler* v. *Brown,* 5 Cranch, 234.

The action of the land department in issuing patents
for the public lands is conclusive as to the legal title,
when acting within the scope of its authority.    In the
case of *Steel* v. *Smelting Co., supra,* the court says:

"The land department, as we have repeatedly said, was established to supervise the various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of congress are fully complied with.   Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale.   Its judgment upon these matters is that of a special tribunal, and is unassailable, except by direct proceedings for its amendment or limitation.   Such has been the uniform language of this court in repeated decisions.

In *Johnson* v. *Towsley*, the effect of the action of that department was the subject of special consideration; and the court applied the general doctrine "that when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others; that the action of the land officer, in issuing a patent for any of the public lands, subject to sale by pre-emption or otherwise, is conclusive of the legal title, must be admitted under the principle above stated; and in all courts, and in all forms of judicial proceedings, where this title must control, either by reason of the limited powers of the court, or the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained."   13 Wall. 72; *French* v. *Fyan*, 93 U. S. 169; *Quimby* v. *Cowlan*, 104 U. S. 104; *Vance* v. *Burbank*, 101 U. S. 514; *Beard* v. *Federy*, 3 Wall. 478; *Moore* v. *Wilkinson*, 13 Cal. 478.

These presumptions as to the conclusiveness of a patent, and the title it conveys, are confined to matters over which the land department has jurisdiction; it must act within the scope of its authority and as authorized by law.   If it goes beyond its jurisdiction the patent would

be so far void, and this may be shown in an action at law.

In the case of *The Smelting Co.* v. *Kemp, supra,* the court says: "Of course, when we speak of the conclusive presumptions attending a patent for lands, we assume that it was issued in a case where the department had jurisdiction to act and execute it; that is to say, in a case where the lands belonged to the United States, and provision had been made by law for their sale. If they never were public property, or had previously been disposed of, or if congress had made no provision for their sale, or had reserved them, the department would have no jurisdiction to transfer them; and its attempted conveyance of them would be inoperative and void, no matter with what seeming regularity the forms of law may have been observed. The action of the department would, in that event, be like that of any other special tribunal, not having jurisdiction of a case which it assumed to decide. Matters of this kind, disclosing a want of jurisdiction, may be considered by a court of law." *Polk's Lessees* v. *Wendell,* 9 Cranch, 99; *Patterson* v. *Winn,* 11 Wheat. 380; *Hoofnagle* v. *Anderson,* 7 Wheat. 212; *Boardman* v. *Lessee of Reed,* 6 Pet. 328; *Bognell* v. *Broderick,* 13 Pet. 463; *Moore* v. *Robins,* 96 U. S. 530.

The principles enunciated in these cases apply with much force to a case where the land office, without authority of law, inserts an exception into the granting part of a patent that the law does not authorize, whereby the title of the patentee is defeated. The Pawnbroker mining claim, at the time of the issuance of the patent therefor, was a valid claim and possession under existing laws of congress, and the patentee was entitled to the exclusive possession and enjoyment of all the surface ground thereof. There was no law depriving him in any manner of the right to such possession. He had purchased the property and paid for it, and was entitled to

a conveyance of the full and complete title. As between individuals, he stood in a position to compel such a conveyance. There was no law authorizing the land department to except the surface ground from the conveyance, or in any other manner to abridge the title of the purchaser, and in so doing it exceeded its authority, and its act, to that extent, is void and of no effect upon the property conveyed. An exception that is void leaves the patent to stand as though it contained no such exception. *Stark* v. *Starrs, supra.*

In *Wolfley et al.* v. *Lebanon Mining Co.* 4 Col. ·115, it is held that if the patent is broader than the law, it is to that extent ineffectual, and on the same principle, if it is narrower than the law, and contains unauthorized exceptions, whereby the grant is unlawfully abridged and contracted, such exceptions would be ineffectual to defeat the full title. And if the exception, when read in the light of existing law, is seen to be ineffectual and void, it may be so declared in an action at law. But whatever may be the terms of the Pawnbroker patent, and whether it conveys the full title of respondents or not, the town site patent, under which appellants claim, by its terms, and by the express provisions of the statute under which it was issued, forbids the acquisition of any title or right to any mining claim by virtue of such patent. And so, if the Pawnbroker patent should fail, and the Pawnbroker mining claim remained a valid location under existing laws of congress, the appellants would acquire no right or interest therein by virtue of the town site patent. If a mining claim patent relates back to the location, as the authorities declare that it does, then there could be no merger in the patent, so as to let in intervening claimants between the location and the patent. It is difficult to see how a greater title could be merged in a lesser one. If by exceptions and reservations the patent becomes the lesser title, still it relates back to the location, and does not destroy it. The loca-

tion supports the patent, and the title by the patent ought to be as broad as the title by location, and a continued compliance with the law, and always will be, unless cut down and abridged by unlawful exceptions and reservations; and these do not affect the grant of title evidenced by the patent. The patent of a mining claim, when drawn according to law, is evidence of a perfected right in the patentee. It is the consummation of a series of acts, having for their object the acquisition of title, and if it contains exceptions and reservations not authorized by law, these will be disregarded in an action at law, so that the patent may stand and be sustained as the evidence of a perfected title in the patentee.

The judgment is affirmed.

All concurred.