JUSTICE NELSON
delivered the Opinion of the Court.
¶1 Kent Peterson, Kathleen A. Peterson, Lisle E. Wood, Pauline P. Wood (now known as Pauline P. Thomas), Jonathan B. Clark, and Vidgis J. Clark[1] (collectively, “Landowners”) appeal from the order of the District Court for the Second Judicial District, Silver Bow County, granting partial summary judgment in favor of Our Lady of the Rockies, Inc. (“OLR”). We reverse.
¶2 The parties raise a number of issues related to the easement at issue here; however, the dispositive question on appeal is as follows: Did the District Court err in concluding that the federal government expressly reserved a public road across the Landowners’ properties by referring in an 1896 federal land patent to a mineral survey that depicted a road labeled “ROAD”?
FACTUAL AND PROCEDURAL BACKGROUND I. Overview of Patenting Under the General Mining Act of 1872
¶3 A brief overview of the process of securing a patent to a mining claim is helpful in understanding the facts and issues of this case. Under the General Mining Act of 1872,[2] a private citizen may enter federal lands to explore for valuable mineral deposits. California Coastal Com’n v. Granite Rock Co., 480 U.S. 572, 575, 107 S. Ct. 1419, 1422 (1987). If a valuable mineral deposit is located, a mining claim *396 may be filed for a lode or placer claim.[3] R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061, 1063 (9th Cir. 1997). If the claim is perfected by properly staking it and complying with other statutory requirements, the claimant has the exclusive right to possession and enjoyment of all the surface included within the lines of his location. California Coastal Com’n, 480 U.S. at 575,107 S. Ct. at 1422; Talbott v. King, 6 Mont. 76, 97-99, 9 P. 434, 435-36 (1886). The area becomes the property of the locator and, thus, segregated from the public domain-i.e., the grounds within the boundaries of the location cease to be public lands when the location is made-but the United States retains title to the land. St. Louis Mining & Milling Co. v. Montana Mining Co., 171 U.S. 650, 655, 19 S. Ct. 61, 63 (1898); California Coastal Com’n, 480 U.S. at 575, 107 S. Ct. at 1422; Talbott, 6 Mont. at 108, 9 P. at 442; Silver Bow Mining & Milling Co. v. Clarke, 5 Mont. 378, 413, 5 P. 570, 575 (1885). Possessory interest in the claim can be held indefinitely, provided that the annual assessment work is performed, all necessary filings and fee payments are made, and the valuable mineral deposit continues to exist. Independence Mining Co., Inc. v. Babbitt, 105 F.3d 502, 506 (9th Cir. 1997).
¶4 The holder of a perfected mining claim may secure fee title to the land by applying to the United States Department of the Interior for a patent[4] and complying with the requirements of the General Mining Act and regulations promulgated thereunder. California Coastal Com’n, 480 U.S. at 575-76, 107 S. Ct. at 1422; Independence Mining, 105 F.3d at 506. One such requirement is filing in the proper land office, along with the application, a survey and field notes of the claim made by or under the direction of the United States Surveyor General showing accurately the boundaries of the claim, which must be distinctly marked by monuments on the ground. See Silver King Coalition Mines Co. v. Conkling Mining Co., 255 U.S. 151, 161, 41 S. Ct. 310, 311 (1921); see also Waskey v. Hammer, 223 U.S. 85, 92, 32 S. Ct. 187, 188 (1912). Upon issuance of the patent, legal title to the land passes to the patent holder. California Coastal Com’n, 480 U.S. *397 at 576, 107 S. Ct. at 1422. Furthermore, title relates back to the date the claim was located. United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 334-35, 26 S. Ct. 282, 286 (1906); United States v. Etcheverry, 230 F.2d 193, 196 (10th Cir. 1956); Talbott, 6 Mont. at 106-07, 9 P. at 441. In other words, “the location of a mine is the inception of a title, and ... the patent, when issued, relates back to the location, and conveys to the patentee all the interest that the government had at the time of the location.” Murray v. City of Butte, 7 Mont. 61, 68, 14 P. 656, 657 (1887) (citing Butte City Smoke-House Lode Cases, 6 Mont. 397, 12 P. 858 (1887), and Deffeback v. Hawke, 115 U.S. 392, 6 S. Ct. 95 (1885)).
II. The Land and Road at Issue
¶5 The Cobban Placer, the Plymouth Rock Placer, and the Plymouth Rock Extension Placer are three parcels of land situated side by side in the East Ridge area of Butte, Montana. The Cobban Placer (the westernmost parcel) was located by William F. Cobban and William H. Lewis in 1892, and the federal government issued the patent in 1896; the Plymouth Rock Placer (the middle parcel) was located by John T. Reese in 1889, and the patent was issued in 1900; and the Plymouth Rock Extension Placer (the easternmost parcel) was located by John T. Reese in 1890, and the patent was issued in 1898. The Cobban Placer has since been subdivided into lots now owned by a number of the Landowners. The Plymouth Rock Placer and the Plymouth Rock Extension Placer, neither of which has been subdivided, are now owned by OLR. It appears from aerial photographs taken in 2002 and included in the record that all three parcels are partially forested, that the Cobban Placer contains a number of structures (residences and outbuildings), and that the Plymouth Rock Placer and the Plymouth Rock Extension Placer are largely undeveloped.
¶6 OLR plans to construct a tram, a tramway station, a parking lot, a carousel, associated amusement park rides, and other tourism-related improvements on the Plymouth Rock Extension Placer. The tram is intended to carry visitors up to Our Lady of the Rockies, a 90-foot statue atop the Continental Divide overlooking Butte. Ridership estimates for the first year of operation vary between 14,075 and 60,285 depending on a variety of factors, including ease of accessibility (construction of an exit ramp off Interstate 15 versus use of the existing frontage road) and marketing efforts.
¶7 At issue in this case is the specific route by which OLR would like to provide public access to the proposed tramway station. It appears from the 1893 survey of the Cobban Placer (Mineral Survey No. 4200), *398 the 1897 survey of the Plymouth Rock Placer (Mineral Survey No. 5153), and the 1897 survey of the Plymouth Rock Extension Placer (Mineral Survey No. 5154) that a road historically traversed the Cobban Placer and the Plymouth Rock Placer and terminated on the Plymouth Rock Extension Placer.[5] According to the field notes corresponding with these surveys, the road varied between 6 and 12 feet wide. At present, the road is paved as it enters the western edge of the Cobban Placer. It then becomes a 12-foot-wide dirt road and remains as such until it reaches a metal gate behind the Woods’ detached garage (about two-thirds of the way across the Cobban Placer). Beyond the gate (i.e., heading east across the remainder of the Cobban Placer toward the Plymouth Rock Placer), the road is an unmaintained, single-track lane with grass growing down the middle.
¶8 The following depiction of the road in relation to the parcels and lots is provided in the record (labels added):
[[Image here]]
*399 III. Proceedings in the District Court
¶9 OLR filed the instant action on September 3, 2003, seeking a declaratory judgment that the stretch of road traversing the Cobban Placer is not a “private access driveway,” as claimed by the Landowners, but rather a “public” road 60 feet in width “available for all uses of a public road by the public.” In support of this claim, OLR argued the following three theories: (1) congressional grant or dedication pursuant to § 2477 of the Revised Statutes of the United States[6] (“R.S. 2477”), (2) common-law dedication, and (3) express reservation of a public road by the federal government when it issued the Cobban Placer patent.[7] The parties filed cross-motions for summary judgment and briefed each of these three theories. In addition, the Landowners argued in the alternative that if an easement does exist for public use, the easement’s scope is a 12-foot-wide dirt road, not a “60-foot, 2-lane public highway barreling through [the Landowners’] properties.”
¶10 The District Court held a hearing on the parties’ motions on July 23, 2004, and entered findings of fact and conclusions of law on November 24, 2004. Addressing OLR’s express-reservation theory, the court stated that “[a]n express easement by reservation arises when the purchaser’s deed refers to a plat where the easement is clearly depicted” (citing Pearson v. Virginia City Ranches Ass’n, 2000 MT 12, ¶ 21, 298 Mont. 52, ¶ 21, 993 P.2d 688, ¶ 21). The court further stated that the reference to the plat “must be sufficient to put the purchaser on ‘inquiry notice’ that the property is being conveyed pursuant to a particular recorded document” (citing Halverson v. Turner, 268 Mont. 168, 173, 885 P.2d 1285, 1288 (1994)). In this regard, the court observed that the Cobban Placer patent refers to Mineral Survey No. *400 4200 (“MS 4200”). This survey depicts the locations, distances, and bearings of the Cobban Placer boundaries, as well as a number of improvements and natural objects, including a ditch, a creek, a road, a ravine, a cabin, and a railroad, all of which are labeled. The survey originally was filed in the United States Surveyor General’s Office in Helena, Montana, on May 20, 1893, and is presently on file at the Bureau of Land Management, Montana State Office, in Billings. Thus, the court reasoned that “MS 4200 was recorded and accessible to the public, such that any person with ‘inquiry notice’ could access the survey to review its contents.” In reaching this conclusion, the court rejected the Landowners’ contention that MS 4200 was not a “recorded” document because it was not filed with the county clerk and recorder.
¶11 As for the nature of the road depicted on MS 4200, the court concluded that it is “public” for a number of reasons. First, the court reasoned that the Cobban Placer “belonged” to the United States at the time it was surveyed (in 1893) and that any road on the land, therefore, was public. Second, the court opined that at the time the Cobban Placer patent was issued (in 1896), the road was the only ingress and egress for persons seeking access to the Plymouth Rock Placer and the Plymouth Rock Extension Placer, both of which still “belonged” to the federal government. Lastly, the court observed that the road had been depicted on a number of surveys and maps over the last century, “often times being identified as a public road.” It appears from this that the court attributed legal significance to the label “public” where it appeared on said surveys and maps.
¶12 The District Court held that there were no genuine issues of material fact as to OLR’s express-reservation theory and that, as a matter of law, the federal government expressly reserved a public road across the Cobban Placer when it referred in the Cobban Placer patent to MS 4200. As for OLR’s R.S. 2477 and common-law dedication theories, the court determined that these two theories could not be resolved on summary judgment. With respect to the former, the court held that factual questions remained as to whether the public accepted the federal government’s offer under R.S. 2477 by establishing a public highway in a maimer recognized under state law. With respect to the latter, the court likewise ruled that factual questions remained regarding the public’s acceptance of the alleged common-law dedication of the road to the public. Moreover, the court observed that the parties had “presented conflicting evidence regarding the following issues: (1) the actual commercial or public uses of the Road, if any, and *401 the duration of such uses; (2) the nature and extent of county maintenance of the Road; and (3) the width of the Road, if it is determined to be a public road or easement.” Accordingly, the court denied OLR’s motion for summary judgment with respect to the R.S. 2477 and common-law dedication theories. The court also denied the Landowners’ cross-motion for summary judgment.
¶13 The Landowners now appeal from the grant of summary judgment on OLR’s express-reservation theory. Neither party appeals from the District Court’s denial of summary judgment on OLR’s R.S. 2477 and common-law dedication theories.
STANDARD OF REVIEW
¶14 We review a district court’s ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court. Cole v. Valley Ice Garden, L.L.C., 2005 MT 115, ¶ 4, 327 Mont. 99, ¶ 4, 113 P.3d 275, ¶ 4. Rule 56(c) provides that “[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences are to be drawn therefrom in favor of the party opposing summary judgment. Redies v. Attorneys Liability Protection Soc., 2007 MT 9, ¶ 26, 335 Mont. 233, ¶ 26, 150 P.3d 930, ¶ 26. The determination that the moving party is or is not entitled to judgment as a matter of law is a legal conclusion, which we review for correctness. Hughes v. Lynch, 2007 MT 177, ¶ 8, 338 Mont. 214, ¶ 8, 164 P.3d 913, ¶ 8; Hi-Tech Motors v. Bombardier Motor Corp., 2005 MT 187, ¶ 32, 328 Mont. 66, ¶ 32, 117 P.3d 159, ¶ 32.
DISCUSSION
I. Preliminary Matters
¶15 Before addressing the parties’ arguments, it is necessary to dispose of four preliminary matters concerning the issues before us and the law applicable to those issues.
¶16 First. The parties do not dispute whether OLR itself may use the roadway across the Cobban Placer for ingress to and egress from the Plymouth Rock Placer and the Plymouth Rock Extension Placer. In their opening brief, the Landowners state that they “never have denied that a primitive road passes beyond [the Woods’] parcel, over the Clark *402 parcel, to the Plymouth Rock Placer parcels, and never have denied that the road provides private access for the owners of those parcels.” The Landowners do not identify the source of this private easement; however, that point is immaterial to our analysis, since the specific dispute in this case is whether the general public may use the roadway to access the Plymouth Rock Placer and the Plymouth Rock Extension Placer.
¶17 Second. The scope of this appeal is confined to OLR’s express-reservation theory, which is the only theory on which the District Court granted summary judgment and is the only theory argued by the parties on appeal. Under this theory, a public road across the Cobban Placer was created by express reservation in the Cobban Placer documents of conveyance (the Cobban Placer patent, MS 4200, and MS 4200’s field notes). Notwithstanding, the Dissent presents a lengthy argument that a public road across the Cobban Placer was created under R.S. 2477. Yet, the District Court explicitly determined with respect to OLR’s R.S. 2477 theory that “questions of material fact exist and the issue cannot be resolved by summary judgment.” Neither party has appealed from this ruling. Accordingly, OLR’s R.S. 2477 theory is an issue to be addressed by the parties on remand, should they choose to do so; it is not an issue for this Court to decide on this appeal. Indeed, as OLR points out in its response brief on appeal, any discussion about R.S. 2477 is “irrelevant to this case.”
¶ 18 Third. The only facts that are pertinent to our analysis herein are those which pertain to the creation of MS 4200 and to the issuance of the Cobban Placer patent and over which there is no genuine dispute. The Dissent, however, inserts into this appeal a number of factual matters that are irrelevant, unproven, disputed by the parties, or contradicted by the record. For instance, the Dissent advises us that we should “examine the development of the Road at issue,” Dissent, ¶ 102, and the Dissent then purports to do so, opining that the road depicted on MS 4200 has been in existence and in use since 1889 when John T. Reese located the Plymouth Rock Placer, that the road constituted the sole means of access to the Plymouth Rock Placer and the Plymouth Rock Extension Placer, and that William F. Cobban and William H. Lewis were “familiar with” the road when they located the Cobban Placer in 1892, see Dissent, ¶¶ 106, 108, 110, 125, 130, 135, 136, 139. These factual matters, however, are not established in the record. No evidence has been presented in this case as to what roads, if any, existed in 1889 and 1892 in the area which ultimately became the Cobban Placer and the Plymouth Rock Placer and what route *403 Reese actually used when he located his claim. There also is no evidence in the record establishing when the road at issue was constructed, who actually used it, and over what period of time they did so. According to the report provided by OLR’s expert in conjunction with the results of his research, his evidence established the existence of the road only since 1893, when the Cobban Placer was surveyed and MS 4200 was created.[8] But even if the road did exist as early as 1889, there is nothing in the record establishing that it was made “public” pursuant to any of the methods of creating a public road under Montana law prior to 1892, when the Cobban Placer was segregated from the public domain. See ¶¶ 3, 5, supra; State ex rel. Dansie v. Nolan, 58 Mont. 167, 173, 191 P. 150, 152 (1920). The District Court made no findings of fact as to any of these matters. Indeed, the court observed that the parties had presented conflicting evidence regarding “the actual commercial or public uses of the Road, if any, and the duration of such uses.” Thus, the Dissent’s suggestion that these matters are established in the record is false.
¶19 Moreover, the question at hand is not whether a public road was established over the Cobban Placer by necessity, public use, or acceptance of a dedication to the public. Rather, as explained above, the question is whether the District Court correctly determined, as a matter of law, that the federal government created a public road by express reservation in the Cobban Placer documents of conveyance. For this reason, the Dissent’s dubious factual assertions, which largely relate to its R.S. 2477 argument, are not relevant to the issue on appeal.
¶20 Along these same lines, the Dissent relies on various maps and records pertaining to the subject properties. See e.g. Dissent, ¶¶ 111, 138. However, none of these maps and records is referred to in the Cobban Placer patent. As a matter of fact, all of these maps and records post-date the patent. Thus, the maps and records cited by the Dissent are entirely irrelevant for purposes of ascertaining the federal government’s intent when it issued the Cobban Placer patent in 1896. Again, the only documents and facts of record that are pertinent to our *404 analysis are those which pertain to the creation of MS 4200 and to the issuance of the Cobban Placer patent and over which there is no genuine dispute.
¶21 Fourth. The last preliminary matter concerns the law applicable to our interpretation of the Cobban Placer patent. Although the Cobban Placer patent contains an express reservation of “a right of way... for ditches or canals constructed by the authority of the United States,” the patent contains no such express reservation of a “public road” across the Cobban Placer. Thus, OLR invokes a state-law doctrine, articulated by this Court during the last 22 years, under which an easement may be created by reference in an instrument of conveyance to a plat or certificate of survey which adequately describes the easement. (This doctrine is explained in detail below.) OLR contends that the federal government expressly reserved a public road across the Cobban Placer by referring in the Cobban Placer patent to MS 4200, which depicts a road that is labeled “Road.” The Dissent also presents a brief argument premised on this easement-by-reference doctrine. Dissent, ¶¶ 134-138. Yet, neither OLR nor the Dissent cites any authority that such a doctrine existed under Montana law when the Cobban Placer patent was issued or that parties to land transfers in 1896 even contemplated that easements could be created in this manner. More to the point, OLR and the Dissent cite no authority that the federal government’s intent in an 1896 land patent may be construed pursuant to a doctrine that evolved under state law 100 years after the fact.
¶22 In this regard, the Landowners, citing Ritter v. Morton, 513 F.2d 942, 946 (9th Cir. 1975), point out that federal law governs the construction of a federal land patent and the quantum of the premises which it conveys. OLR responds that, pursuant to “well established federal common law,” where lands are granted according to an official plat of the survey of such lands, the plat itself becomes a part of the grant or deed by which the lands are conveyed. However, the Landowners correctly point out that not one of the federal cases cited by OLR recognizes the creation of an easement by reference in a federal land patent to a mineral survey. Furthermore, the Landowners contend that federal law in 1896 required a reservation to be set out expressly in the patent itself, not divined from a depiction on a *405 referenced mineral survey.[9]
¶23 Yet, at no point during this exchange does either party present a sufficiently comprehensive analysis as to which law-federal or state-governs the construction of the Cobban Placer patent, and this issue is not as straightforward as the Landowner’s citation to Ritter suggests. In United States v. Oregon, 295 U.S. 1, 55 S. Ct. 610 (1935), the Supreme Court stated that “[t]he construction of grants by the United States is a federal not a state question and involves the consideration of state questions only in so far as it may be determined as a matter of federal law that the United States has impliedly adopted and assented to a state rule of construction as applicable to its conveyances.” Oregon, 295 U.S. at 28, 55 S. Ct. at 621 (citations omitted); see also United States v. Pappas, 814 F.2d 1342, 1345 n. 8 (9th Cir. 1987) (“Unless Congress expresses a contrary intention, federal patents will be construed according to the law of the state in which the land lies.”). Thus, it appears that the threshold issue here is whether the United States adopted and assented to a state rule of construction.
¶24 If a state rule of construction does guide the interpretation of the Cobban Placer patent, the next issue is whether an easement-more specifically, a public road-could be created under Montana law in 1896 by a mere reference in an instrument of conveyance to a plat or survey depicting the easement. See Hash v. United States, 403 F.3d 1308, 1315 (Fed. Cir. 2005) (“[T]he property rights of these [land patentees] are governed by the law in effect at the time they acquired their land.”); United States v. Gates of the Mountains Lakeshore Homes, Inc., 732 F.2d 1411, 1413 (9th Cir. 1984) (considering the law as it stood at the time of the land grant, i.e., in March 1901). As noted above, OLR simply assumes that an easement could be created by this method in 1896, without citation to a single case supporting this position. For their part, the Landowners contend that the easement-by-reference doctrine relied on by OLR is “modem” and “does not apply retroactively to a century-old Federal land conveyance.” Yet, while this doctrine is indeed of recent vintage, the notion of an easement created by operation of law to effect the presumed intent of the grantor is longstanding. See e.g. Herrin v. Sieben, 46 Mont. 226, 234-35, 127 P. 323, 328 (1912); Pioneer Mining Co. v. Bannack Gold Mining Co., 60 *406 Mont. 254, 262-65, 198 P. 748, 750-51 (1921). Thus, the Landowners’ observation that the easement-by-reference doctrine is “modem” does not fully answer the question whether an easement could be created under Montana law in 1896 by referring in an instmment of conveyance to a plat or survey depicting the easement.
¶25 Notwithstanding the parties’ competing assumptions as to which law applies, however, we have determined that we need not decide these two choice-of-law issues because we conclude, for the reasons which follow, that neither federal law nor the state-law doctrine relied on by OLR supports OLR’s express-reservation theory.
II. Federal Law
¶26 OLR contends that MS 4200 and the corresponding field notes are part of the Cobban Placer patent. On this point, OLR is correct. In Cragin v. Powell, 128 U.S. 691, 9 S. Ct. 203 (1888), the Supreme Court stated:
It is a well-settled principle that when lands are granted according to an official plat of the survey of such lands, the plat itself, with all its notes, lines, descriptions, and land-marks, becomes as much a part of the grant or deed by which they are conveyed, and controls, so far as limits are concerned, as if such descriptive features were written out upon the face of the deed or the grant itself.
Cragin, 128 U.S. at 696, 9 S. Ct. at 205; see also Chapman & Dewey Lumber Co. v. St. Francis Levee Dist., 232 U.S. 186, 196-97, 34 S. Ct. 297, 299 (1914); Pittsmont Copper Co. v. Vanina, 71 Mont. 44, 54, 227 P. 46, 48 (1924). Here, MS 4200 is an official plat of the survey of the Cobban Placer Mining Claim. Although the Cobban Placer patent does not state specifically that the land is being granted “according to” MS 4200, the Supreme Court stated in Jefferis v. East Omaha Land Co., 134 U.S. 178, 10 S. Ct. 518 (1890), that “where a plat is referred to in a deed as containing a description of land, the courses, distances, and other particulars appearing upon the plat are to be as much regarded, in ascertaining the true description of the land and the intent of the parties, as if they had been expressly enumerated in the deed.” Jefferis, 134 U.S. at 194-95, 10 S. Ct. at 522 (emphasis added). The Cobban Placer patent identifies the land being granted as “that certain PLACER mining claim and premises, designated by the Surveyor General as Lot No. 4200,” and it describes the land pursuant to MS 4200’s field notes. Accordingly, MS 4200, with all its notes, lines, descriptions, and landmarks, is a part of the Cobban Placer patent as if such descriptive features were written out upon the face of the *407 patent itself.
¶27 So ends OLR’s analysis under federal law. Yet, establishing that MS 4200 and the field notes are a part of the Cobban Placer patent is far from establishing that the federal government intended to reserve a public road across the Cobban Placer. In this regard, the Landowners cite Leo Sheep Co. v. United States, 440 U.S. 668, 99 S. Ct. 1403 (1979), in which the Supreme Court declined to recognize a reservation of an easement by the federal government to build a public road across land that was originally granted to the Union Pacific Railroad under the Union Pacific Act of 1862. This Act set out a few specific reservations to the grant-e.g., the grant was not to include mineral lands and land to which there were homestead claims. Thus, given the existence of these explicit exceptions, the Supreme Court noted that it had in the past “refused to add to this list by divining some ‘implicit’ congressional intent.” See Leo Sheep, 440 U.S. at 678-79, 99 S. Ct. at 1409 (citing Missouri, Kansas, & Texas Ry. Co. v. Kansas Pacific Ry. Co., 97 U.S. 491 (1878)). Indeed, the inference prompted by the omission of any reference in the 1862 Act to the right asserted by the government (to build a public road across the granted land) was that no such right had been reserved, see Leo Sheep, 440 U.S. at 681, 99 S. Ct. at 1410, and the Supreme Court stated that it was “unwilling to imply rights-of-way, with the substantial impact that such implication would have on property rights granted over 100 years ago, in the absence of a stronger case for their implication than the Government makes here,” Leo Sheep, 440 U.S. at 682, 99 S. Ct. at 1411.[10]
¶28 OLR contends that Leo Sheep is inapplicable to this case because OLR’s theory is one of express, not implied, reservation of an easement. Yet, OLR’s theory is that a public road was reserved over the Cobban Placer by virtue of the reference in the Cobban Placer patent to MS 4200, and OLR cites no authority for the proposition that a reference in a federal land patent to a mineral survey which depicts a road labeled “ROAD” qualifies as an “express” reservation under federal law. In any case, we conclude that the rules of construction articulated in Leo Sheep are pertinent in construing the federal government’s intent when it issued the Cobban Placer patent.
¶29 Turning, then, to the language of the Cobban Placer patent, we *408 observe that this document contains a number of express reservations to the grant. In particular, “there is reserved from the lands hereby granted, a right of way thereon for ditches or canals constructed by the authority of the United States.” In addition, the patent states that
the premises hereby conveyed may be entered by the proprietor of any vein or lode of quartz or other rock in place bearing . . . valuable deposits, for the purpose of extracting and removing the ore from such vein or lode, should the same, or any part thereof, be found to penetrate, intersect, pass through or dip into the mining ground or premises hereby granted.[11]
But there is no express reservation of a road-let alone a public road-anywhere in the patent.
¶30 The inference prompted by the presence of certain express reservations in the patent and the absence of an express reservation of the particular right-of-way alleged by OLR (a public road) is that no such right-of-way was reserved. Leo Sheep, 440 U.S. at 681, 99 S. Ct. at 1410. Indeed, on this point, the Landowners direct our attention to Hash v. United States, 403 F.3d 1308 (Fed. Cir. 2005), where the land patents at issue reserved to the United States certain specified rights (namely, previously vested and accrued water rights, previously granted mineral rights, and rights-of-way for ditches or canals) but did not mention the right alleged by the government (a reversionary interest in land underlying discontinued railroad rights-of-way). See Hash, 403 F.3d at 1314. The Hash court refused to imply a reservation of this right in light of “the well-recognized rule that property rights that are not explicitly reserved by the grantor cannot be inferred to have been retained.” Hash, 403 F.3d at 1314. The court observed that the Supreme Court “has consistently preserved the integrity of the land grant patent” and “has required that unless a property interest was expressly reserved by the government, whether in the patent grant or by statute or regulation then in effect, the disposition of the land was in fee simple.” Hash, 403 F.3d at 1315-16. These principles compel the same conclusion in the case at hand, namely, that the United States did not reserve a public road over the Cobban Placer.
¶31 OLR points out, however, that the reservation in the Cobban Placer patent for ditches or canals was required by 43 U.S.C. § 945 in *409 all patents for lands taken up after August 30, 1890. But this only confirms that when the federal government wishes to include an express reservation in a patent, it is perfectly capable of doing so. OLR suggests that the United States would not have reserved an easement for public roads “in every patent.” But surely, had it wished to do so, Congress could have required that an express reservation of public roads be included in all patents under particular circumstances-e.g., when a road already existed across the mining claim at the time the claim was surveyed. Again, no such express reservation appears in the Cobban Placer patent, which compels the conclusion that no public road was reserved.
¶32 Nevertheless, OLR maintains that the reference in the patent to MS 4200, the depiction on MS 4200 of a road labeled “ROAD,” and the descriptions of this road (its width, location, and course) in the field notes demonstrate the federal government’s “clear intent” to reserve a public road. Yet, according to the 1890 Manual of Surveying Instructions for the Survey of the Public Lands of the United States and Private Land Claims, surveyors were required to note a wide variety of objects and data during a survey, including creeks, ponds, ravines, improvements (e.g., cabins, groves, forges), natural curiosities, and “[r]oads and trails, with their directions, whence and whither.” The purpose of these notations is made clear in the Surveyor General’s certification on MS 4200:
The Original Field Notes of the Survey of the Mining Claim . . . known as the Cobban Placer from which this plat has been made under my direction have been examined and approved, and are on file in this office, and I hereby certify that they furnish such an accurate description of said Mining Claim as will, if incorporated into a patent, serve fully to identify the premises, and that such reference is made therein to natural objects or permanent monuments as will perpetuate and fix the locus thereof. [Emphases added.]
¶33 Given these stated purposes of MS 4200’s field notes, we conclude that the intent behind describing the road therein and depicting it on MS 4200 was to aid in the identification of the Cobban Placer and to fix the locus thereof. It is inconceivable that the federal government intended to reserve for public use every creek, trail, cabin, mineshaft, ravine, railroad, and so forth depicted and labeled on a mineral survey. Indeed, OLR’s argument overstates the function and authority of the Cobban Placer surveyor. See e.g. State v. Crawford, 441 P.2d 586 (Ariz. App. 1968). In Crawford, the government argued that a surveyor’s *410 notation of a public right-of-way on a survey plat referred to in the landowner’s patent was tantamount to an explicit reservation or exception in the patent itself and that the landowner was bound thereby. Crawford, 441 P.2d at 588, 589. The court rejected this argument outright, stating that the existence of the right-of-way in question depended on the pertinent Arizona laws regarding the establishment of highways. Crawford, 441 P.2d at 589. The court further observed that the force of the government’s argument was “broken by well-settled limitations imposed on the function and authority of a surveyor. . . . While the reference to the plat of this surveyor undoubtedly has bearing upon the legal boundaries of the tract of land conveyed, this plat cannot determine the legality of the right-of-way here in dispute.” Crawford, 441 P.2d at 589.
¶34 Furthermore, it is highly improbable that the United States would reserve a public road to access two mining claims-the Plymouth Rock Placer and the Plymouth Rock Extension Placer-that had already been located and, thus, segregated from the public domain. See ¶¶ 3, 5, supra. Indeed, the testimony of OLR’s expert on this point is consistent with our conclusion. At the hearing, the District Court inquired whether, “if there’s a map that says ‘road,’ does that give you an indication that the public has access to that?” In response, the expert testified: “No. In that particular case, the only access that would be a public road is if it was public lands on both sides that the road was traversing through, and at the time it was dedicated, it was accessing public lands on both sides.” As just noted, the Plymouth Rock Placer and the Plymouth Rock Extension Placer had already ceased to be public lands by 1893 when the Cobban Placer was surveyed and MS 4200 was created. According to the interpretation offered by OLR’s expert, therefore, the label “ROAD” on MS 4200 is not indicative of a public road. For these reasons, we do not agree with OLR’s assertion that the Cobban Placer patent, MS 4200, and the field notes, taken together, demonstrate a “clear intent” to reserve a public road.
¶35 Finally, even if we could agree that the depiction of the road on MS 4200 constitutes an attempted reservation of a public right-of-way across the Cobban Placer, we would be forced to conclude that this reservation is void. In Silver Bow Mining & Milling Co. v. Clarke, 5 Mont. 378, 5 P. 570 (1885), the Court discussed an exception that the Land Department had inserted into the patent for the Pawnbroker Lode Claim. This claim was located in 1875, and the patent was issued in 1880. The exception stated as follows: “excepting and excluding from said patent all town-site property rights upon the surface, and all *411 houses, buildings, lots, blocks, streets, alleys, or other municipal improvements on the surface of said Pawnbroker mining claim.” Silver Bow M. & M. Co., 5 Mont. at 407-08, 5 P. at 571. Addressing the validity of this exception, the Court first stated the settled principle that “[a] patent for a mining claim relates back to the location, and is the consummation of the purchase then made.” Silver Bow M. & M. Co., 5 Mont, at 422, 5 P. at 580. In other words, “the patentee obtains the same right under [the patent] that he would have obtained if the patent had issued immediately after the location and compliance with the terms of the statute,” and “[n]o unauthorized act of the land-officer in issuing the patent can defeat this title.” Silver Bow M. & M. Co., 5 Mont. at 422-23, 5 P. at 580. Continuing its analysis, the Court observed that the Land Department “must act within the scope of its authority, and as authorized by law. If it goes beyond its jurisdiction, the patent would be so far void.” Silver Bow M. & M. Co., 5 Mont. at 424-25, 5 P. at 581-82. Accordingly, where the Land Department inserts into the granting part of a patent an exception or reservation that the law does not authorize, the exception or reservation is void and must be disregarded. Silver Bow M. & M. Co., 5 Mont. at 425,426-27, 5 P. at 582, 583; accord Talbott v. King, 6 Mont. 76, 98-99, 9 P. 434, 435-36 (1886). Applying these principles, the Court held as follows:
There was no law authorizing the land department to except the surface ground from the conveyance [of the Pawnbroker mining claim], or in any other manner to abridge the title of the purchaser; and in so doing, it exceeded its authority, and its act to that extent is void and of no effect upon the property conveyed. An exception that is void, leaves the patent to stand as though it contained no such exception.
Silver Bow M. & M. Co., 5 Mont. at 426, 5 P. at 582.
¶36 In the case at hand, the reservation contained in the Cobban Placer patent of “a right of way... for ditches or canals constructed by the authority of the United States” was statutorily authorized; indeed, it was mandated. See 43 U.S.C. § 945 (“In all patents for lands taken up after August 30, 1890, under any of the land laws of the United States or on entries or claims validated by this Act, west of the one hundredth meridian, it shall be expressed that there is reserved from the lands in said patent described a right of way thereon for ditches or canals constructed by the authority of the United States.”). However, OLR cites no law-and we have found none-authorizing the Land Department to insert a reservation of a public road into the Cobban Placer patent. Necessarily, then, to the extent the depiction of the road *412 on MS 4200 and the reference in the Cobban Placer patent to MS 4200 were intended together as a reservation of a public road, as OLR contends, this reservation is void and must be disregarded.
¶37 The Dissent asserts that we err by not interpreting the Cobban Placer patent pursuant to R.S. 2477. Dissent, ¶ 137. According to the Dissent, R.S. 2477 expresses an intent on the part of the United States to reserve public highways over mining claims. Thus, in the Dissent’s view, although the Cobban Placer documents of conveyance do not contain an express reservation of a public road, the federal government’s intent to reserve one may be gleaned from R.S. 2477. Setting aside the facts that this theory was not argued by OLR in the District Court, was not the basis of the District Court’s decision, and is not argued by OLR on appeal, the Dissent cites no authority whatsoever for the proposition that Congress intended R.S. 2477 to function as a reservation of public roads in federal land patents. Moreover, the Dissent’s theory flies directly in the face of the Supreme Court’s clear instruction not to imply rights-of-way based on an inferred intent, i.e., an intent not set forth expressly in the land patent or an applicable statute. See Leo Sheep, 440 U.S. at 678-82, 99 S. Ct. at 1409-11. In this regard, the Dissent’s theory overlooks the fact that the Cobban Placer patent was issued (according to its opening language) “[i]n pursuance of the provisions of the Revised Statutes of the United States, Chapter Six, Title Thirty-two, and legislation supplemental thereto.” Chapter 6, Title 32 of the Revised Statutes is comprised of Sections 2318 to 2352. Section 2477, however, is contained in Chapter 11, Title 32 of the Revised Statutes. Thus, R.S. 2477 is inapposite for interpreting a patent which was granted in pursuance of R.S. 2318 to 2352.
¶38 But even if it could be said that R.S. 2477 somehow bears on our interpretation of the Cobban Placer patent, this provision merely stated that “[t]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.” This language was nothing more than “an offer of the right of way for the construction of a public highway on some particular strip of public land.” State ex rel. Dansie v. Nolan, 58 Mont. 167, 173, 191 P. 150, 152 (1920) (emphasis added); accord United States v. Pruden, 172 F.2d 503, 505 (10th Cir. 1949). The offer remained in abeyance until it was accepted by the construction of a public highway in a manner authorized by the laws of the state in which the land was situated, and it became effective as a right-of-way only when the road was thus *413 finally constructed.[12] See Nolan, 58 Mont. at 173-74, 191 P. at 152; Pruden, 172 F.2d at 505; Moulton v. Irish, 67 Mont. 504, 507, 218 P. 1053, 1054 (1923). Nothing in this scheme suggests that Congress intended to create public roads indiscriminately, unilaterally, and without regard for the wishes of the affected local body of government. See Crawford, 441 P.2d at 590 (“[R.S. 2477] does not of itself operate to grant right-of-ways and establish highways contrary to the local laws.”); Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735, 763 n. 15 (10th Cir. 2005) (observing that each state had the authority to govern its own acceptance of the R.S. 2477 offer). R.S. 2477 evinces an intent to offer the right-of-way for the construction of a public highway in a manner authorized by the laws of the state, not an intent to reserve for public use all roads depicted on mineral surveys.
¶39 Indeed, the notion of R.S. 2477 as some sort of implicit reservation was rejected long ago in Robertson v. Smith, 1 Mont. 410 (1871):
The defendants [the county commissioners of Meagher County] insist that any miner who locates a mining claim does so subject to right of the public under [R.S. 2477] to construct a highway over the same. There is no reservation of this kind in the grant to the miner. . . . The proper construction of the law upon these subjects is, I think, that miners have the right to occupy and explore unappropriated public mineral lands; that the public have a right to an easement for a highway over the unoccupied public domain, and that whichever is prior in time is prior in right. It is as inconsistent for the public to claim a right of way over an appropriated mining claim without giving the owner thereof a just compensation for his rights as it would be for a miner to claim the right to appropriate for mining purposes a portion of the public domain which had been devoted to the use of a public highway. The statute does not, by express terms, or by implication, make either of these rights superior to each other.
Robertson, 1 Mont. at 417-18; accord St. Louis & San Francisco R. Co. *414 v. Love, 118 P. 259, 260-61 (Okla. 1911) (observing that R.S. 2477 amounted to “a standing offer,” not a “reservation”); see also Southern Utah Wilderness Alliance, 425 F.3d at 766 n. 17 (noting that the Land Department declined to treat R.S. 2477 as an express reservation of a right-of-way in a patent for a land grant (citing Douglas County, Washington, 26 Pub. Lands Dec. 446 (1898))). We therefore reject the Dissent’s expansive reading of R.S. 2477, under which the depiction of a road on a mineral survey constitutes a reservation of a public thoroughfare, whether or not the R.S. 2477 offer was accepted in a manner authorized by state law.
¶40 The Supreme Court “has traditionally recognized the special need for certainty and predictability where land titles are concerned,” and the Court is, therefore, “unwilling to upset settled expectations to accommodate some ill-defined power to construct public thoroughfares without compensation.” Leo Sheep, 440 U.S. at 687-88, 99 S. Ct. at 1413-14. Given this sentiment-with which we agree-we will not divine some implicit intent on the part of the United States to reserve a public road across the Cobban Placer based on nothing more than the notation of a 6-foot-wide road in MS 4200’s field notes and the depiction of this road on MS 4200. The impact such an implication would have on those property rights in this state which derive from federal land patents granted more than a century ago is substantial and cannot be disregarded based on such an implausible inference.
¶41 The reference in the Cobban Placer patent to MS 4200 did not reserve a public road over the Cobban Placer under federal law.
III. State Law
¶42 As noted above, in support of its express-reservation theory, OLR invoked the state-law doctrine under which an easement may be created by reference in an instrument of conveyance to a plat or certificate of survey which adequately describes the easement. The District Court, accordingly, analyzed OLR’s claim pursuant to this doctrine. OLR again relies on the doctrine on appeal, as does the Dissent.
¶43 Yet, the terms of the Cobban Placer patent are governed by the law in effect at the time the patent was issued, Hash v. United States, 403 F.3d 1308, 1315 (Fed. Cir. 2005); United States v. Gates of the MountainsLakeshoreHomes, Inc., 732 F.2d 1411,1413 (9th Cir. 1984), and at no point in their respective arguments does OLR or the Dissent produce any authority establishing that under Montana law in 1896, a public road could be created merely by referring in a federal land patent to a mineral survey depicting a road labeled “ROAD.” Rather, *415 OLR and the Dissent simply assume that a public road could be created in this manner-an assumption that the Landowners correctly dispute.
¶44 Nevertheless, because the easement-by-reference doctrine is the sole basis of OLR’s state-law arguments, and because the doctrine correspondingly is the sole basis of the District Court’s decision on OLR’s express-reservation theory, we will address this issue by assuming, arguendo, that the doctrine applies retroactively to the Cobban Placer patent, and we will consider whether the doctrine provides for the creation of a public road across the Cobban Placer. We begin, however, by reviewing the doctrine and its evolution in our caselaw.
A. Easements Created by Reference to a Plat or Certificate of Survey
¶45 In Majers v. Shining Mountains, 219 Mont. 366, 711 P.2d 1375 (1986), Shining Mountains acquired and subdivided a 7,000-acre ranch. In order to sell the lots, Shining Mountains prepared and recorded subdivision plats which assigned a number to each lot and designated common areas and roadways. The purchase and sale contracts prepared by Shining Mountains specifically referred to the recorded plats. See Majers, 219 Mont. at 367, 711 P.2d at 1376. On these facts, we held that the purchasers had acquired private easements for the designated uses. See Majers, 219 Mont. at 371, 711 P.2d at 1378. In so doing, we observed that selling lots with reference to a map or plat designating streets, parks, or other open areas creates an implied covenant that the streets, parks, or other open areas exist and shall be used in the manner designated. See Majers, 219 Mont. at 370-71, 711 P.2d at 1377-78. The rationale for this rule, we noted, is “ ‘the use made of the plat in inducing the purchasers.’ ” Majers, 219 Mont. at 371, 711 P.2d at 1378 (quoting Ute Park Summer Homes Ass’n v. Maxwell Land Grant Co., 427 P.2d 249, 253 (N.M. 1967)). More specifically, as the Ute Park court explained:
[A] grantor, who induces purchasers, by use of a plat, to believe that streets, squares, courts, parks, or other open areas shown on the plat will be kept open for their use and benefit, and the purchasers have acted upon such inducement, is required by common honesty to do that which he represented he would do.
Ute Park, 427 P.2d at 253.
¶46 In Benson v. Pyfer, 240 Mont. 175, 783 P.2d 923 (1989), we reaffirmed that selling lots with reference to a map or plat may create an easement benefiting the purchasers. We observed that under § 76- *416 3-304, MCA, when land is sold with reference to a properly recorded plat, the plat becomes part of (i.e., is incorporated into) the document conveying the interest in land. See Benson, 240 Mont. at 179, 783 P.2d at 925. The effect of this statutory provision, we reasoned, is to create an easement for the purchaser’s benefit with respect to improvements represented on the plat. See Benson, 240 Mont. at 179, 783 P.2d at 925 (citing Majers, 219 Mont. at 370, 711 P.2d at 1377). Likewise, in Pearson v. Virginia City Ranches Ass’n, 2000 MT 12, 298 Mont. 52, 993 P.2d 688, we stated that “an easement arises when a purchaser’s deed refers to a plat where an easement is depicted and labeled,” Pearson, ¶ 26, and we concluded, based on this rule, that a bridle path easement had been created for the use of all lot owners in the subdivision because the purchasers’ deeds referred to a recorded plat that clearly depicted and labeled this easement, see Pearson, ¶¶ 1-27.
¶47 We applied these principles in favor of the sellers in Bache v. Owens, 267 Mont. 279, 883 P.2d 817 (1994). At issue in that case was a 33.64-acre tract of land owned by the Baches. They agreed to sell 2.42 acres (Tract 2) to Owens and to retain the remaining 31.22 acres (Tract 1). The 1988 deed described the property being conveyed by metes and bounds and then referred to the property conveyed as “Tract 2 shown on Certificate of Survey No. 1657.” Certificate of Survey No. 1657, in turn, provided legal descriptions and a scaled drawing of the boundaries of Tracts 1 and 2. In addition, the certificate of survey depicted a dotted line 30 feet east of, and parallel to, the western boundary of Tract 2. The dotted line extended from the northern boundary of Tract 2 to the southern boundary of Tract 2. The area between the dotted line and the western boundary of Tract 2 was labeled “P.R.E.,” which the legend identified as “private roadway easement.” See Bache, 267 Mont, at 281-82, 291, 883 P.2d at 819, 823. ¶48 The Baches asserted that by these transaction documents, they had reserved an easement across Tract 2 for the benefit of Tract 1. We agreed. Citing Benson, 240 Mont. at 179, 783 P.2d at 925, and § 76-3-304, MCA, we observed that “reference in documents of conveyance to a plat which describes an easement establishes the easement.” Bache, 267 Mont. at 283, 883 P.2d at 820; see also Bache, 267 Mont. at 285, 883 P.2d at 821 (“[A] map or plat incorporated into an instrument of conveyance can establish an easement.” (citing Majers, 219 Mont. at 371, 711 P.2d at 1378)). We further observed that Certificate of Survey No. 1657 “identifies the easement clearly and specifically” with the dotted line and the label “private roadway easement,” and that it “was filed with the county clerk and recorder, as required by law.” Bache, *417 267 Mont. at 286, 883 P.2d at 822. We held, therefore, that the transaction documents established an easement in favor of Tract 1 along the western edge of Tract 2, as described in the certificate of survey. Bache, 267 Mont. at 286, 883 P.2d at 822.
¶49 We reached the same conclusion in Halverson v. Turner, 268 Mont. 168, 885 P.2d 1285 (1994). That case involved two adjoining tracts of land owned by the parties’ predecessor in interest, Dahlia Halverson. In 1987, Dahlia transferred the western tract to Shirley Turner while retaining the eastern tract. The deed referred to a recorded certificate of survey that showed a 30-foot-wide road easement extending from the northeast corner of Turner’s tract westerly for a distance of 188.52 feet. This easement was to provide access from Dahlia’s retained and otherwise-landlocked tract to a street running north from the northern boundary of Turner’s tract. See Halverson, 268 Mont. at 170-71, 885 P.2d at 1287.
¶50 In analyzing these transaction documents, we observed that a land description is a necessary inclusion in an instrument conveying title so that the extent of the claim to the property may be determined, and a reference to a map or plat may be included to express, confirm, or amplify the land description. See Halverson, 268 Mont. at 172, 885 P.2d at 1288. Furthermore, reference in documents of conveyance to a plat which describes an easement establishes the easement, but in determining the existence of an easement by reservation in the documents of conveyance, it is necessary that the grantee of the property being burdened by the servitude have knowledge of its use or its necessity. See Halverson, 268 Mont. at 172,173, 885 P.2d at 1288, 1289. Applying these principles, we noted that although the description of the property being conveyed by the Dahlia-Turner deed did not contain language expressly reserving an easement to Dahlia, it did refer to the recorded certificate of survey which “clearly show[ed]” and “adequately described” the 30-foot-wide road easement. See Halverson, 268 Mont. at 172,173, 885 P.2d at 1288,1289. We held that in this manner, Dahlia had reserved an easement over Turner’s tract for the benefit of Dahlia’s tract. See Halverson, 268 Mont. at 174, 885 P.2d at 1289.
¶51 By contrast, the 1968 plat at issue in Tungsten Holdings, Inc. v. Parker, 282 Mont. 387, 938 P.2d 641 (1997), depicted a meandering strip of land 40 feet wide and approximately 2,700 feet long, which was identified simply as “lot 34.” This parcel resembled a roadway, and the district court found that there was “no other conceivable purpose a parcel of this configuration . . . could reasonably serve.” Yet, nothing *418 in the plat specifically identified lot 34 as such. See Tungsten Holdings, 282 Mont. at 388-89, 938 P.2d at 642. Thus, we held that the mere fact that lot 34’s long and narrow configuration gave it “the appearance of a roadway” or that the developers “may have intended it as [a] roadway” was not sufficient to create a road easement. See Tungsten Holdings, 282 Mont. at 390, 938 P.2d at 642-43. We explained that “[e]asements by reservation must be created or reserved in writing” and “Tungsten can point to no deed or plat which contains any language dedicating or identifying lot 34 as a roadway.” Tungsten Holdings, 282 Mont. at 390, 938 P.2d at 643.
¶52 We discussed an important limitation on the easement-by-reference doctrine in Ruana v. Grigonis, 275 Mont. 441, 913 P.2d 1247 (1996). The properties at issue in that case were split from single ownership in 1977 into a northern tract and a southern tract. Later, the successors in interest to the northern tract claimed that an easement existed for their benefit over the southern tract. However, the language of the 1977 deed did not create or reserve this easement, and the certificate of survey to which the 1977 deed referred did not depict this easement either. See Ruana, 275 Mont. at 444-45, 448-49, 913 P.2d at 1249-50, 1252-53. Although subsequent deeds subdividing the southern tract into smaller parcels referred to certificates of survey that did clearly depict and specifically identify the claimed easement, see Ruana, 275 Mont. at 449, 450, 913 P.2d at 1252, 1253, we noted that under Bache and Halverson, “an easement by reservation can be established when, in conjunction with a division of land, the subject easement is shown on the certificate of survey and the certificate of survey is referred to and incorporated in the deed of conveyance,” Ruana, 275 Mont. at 449, 913 P.2d at 1253 (emphasis added). Thus, we held that the 1977 transaction documents which split the northern and southern tracts from single ownership were “decisive,” Ruana, 275 Mont. at 448, 913 P.2d at 1252; and because these documents did not describe the claimed easement, we concluded that the northern tract did not benefit from this easement over the southern tract, see Ruana, 275 Mont. at 450-51, 913 P.2d at 1253-54.
¶53 We addressed a related restriction on the doctrine in Kelly v. Wallace, 1998 MT 307, 292 Mont. 129, 972 P.2d 1117. The plaintiffs claimed that references to an easement in the deeds of conveyance between the defendants’ predecessors in interest and the defendants were effective as a matter of law to reserve an easement in favor of the plaintiffs. See Kelly, ¶ 47. We disagreed, explaining that while “[a]n easement by reservation may be established by reference in a *419 document of conveyance to a recorded COS which adequately describes the easement,” “creation of an easement by reservation in [this] manner requires that the grantor be a party to the conveyance and that he intend to reserve his own previously-held right to use the servient estate after he sells the divided parcel.” Kelly, ¶ 48. We noted that we may depart from the general rule that an easement cannot be created in favor of a stranger to the deed in order to give effect to the grantor’s intent to benefit a nonparty. See Kelly, ¶ 49 (citing Medhus v. Dutter, 184 Mont. 437, 444, 603 P.2d 669, 673 (1979)). However, we emphasized that such intent must be “clearly shown,” see Kelly, ¶ 49, and we held that express depiction of an easement on a referenced plat is not sufficient to demonstrate the grantor’s intent to create an easement for the benefit of a nonparty, see Kelly, ¶ 51. See also Loomis v. Luraski, 2001 MT 223, ¶¶ 27-37, 306 Mont. 478, ¶¶ 27-37, 36 P.3d 862, ¶¶ 27-37.
¶54 To summarize, our cases have recognized the creation of an easement where the deed explicitly referred to a recorded plat or certificate of survey on which the subject easement was adequately described. However, express depiction of an easement on a referenced plat or certificate of survey is not sufficient, in and of itself, to create an easement for the benefit of a stranger to the deed. In addition, an easement by reservation may be established only when the dominant and servient estates are split from single ownership.
¶55 An easement created in this manner-i.e., by reference in an instrument of conveyance to a plat or certificate of survey on which the easement is adequately described-must arise expressly, not by implication. In Albert G. Hoyem Trust v. Galt, 1998 MT 300,292 Mont. 56, 968 P.2d 1135, we observed that “[a]n easement by implication is created by operation of law at the time of severance, rather than by written instrument,” and that “[t]here are only two types of implied easements: (1) an intended easement based on a use that existed when the dominant and servient estates were severed, and (2) an easement by necessity.” Hoyem Trust, ¶ 17. By contrast, we stated in Halverson that “[a]n easement by reservation must arise from the written documents of conveyance.” Halverson, 268 Mont. at 172, 885 P.2d at 1288; accord Ruana, 275 Mont. at 447, 913 P.2d at 1251; Tungsten Holdings, 282 Mont. at 390, 938 P.2d at 642; Pearson, ¶¶ 18, 20. When the deed itself contains no language reserving (or granting) an easement, our easement-by-reference doctrine contemplates that an adequately described easement depicted on a referenced plat or certificate of survey is sufficient to establish the easement.
*420 ¶56 In Bache, for instance, the certificate of survey depicted Tracts 1 and 2 and a 30-foot-wide strip of land along the western boundary of Tract 2. The strip of land extended from Tract 1 to a state route on the other side of Tract 2, and it was “clearly and specifically” identified with the label “P.R.E.,” which the legend identified as “private roadway easement.” We held that in this manner, the Baches had reserved an easement over Tract 2 in favor of Tract 1. See Bache, 267 Mont. at 282, 286, 291, 883 P.2d at 819, 822, 823. In Halverson, the certificate of survey “clearly show[ed]” and “adequately described” a 30-foot-wide road easement extending from the northeast corner of Turner’s tract westerly for a distance of 188.52 feet to provide access from Dahlia’s adjoining retained tract to a street running north from the northern boundary of Turner’s tract. We held that in this manner, Dahlia had reserved an easement over Turner’s tract for the benefit of Dahlia’s tract. See Halverson, 268 Mont. at 170-71, 172, 173, 885 P.2d at 1287, 1288, 1289. In Pearson, the plat “clearly depict[ed] and label[ed]” a bridle path easement crossing the subdivision for the use of all lot owners. See Pearson, ¶¶ 1, 10, 17. In each of these cases, express language was used (1) to refer in the instrument of conveyance to the plat or certificate of survey and (2) to identify and describe the intended easement. By contrast, in Tungsten Holdings, the mere fact that lot 34’s “long and narrow configuration” gave it “the appearance of a roadway” or that “the developers may have intended it as roadway’ was insufficient. Tungsten Holdings, 282 Mont. at 390, 938 P.2d at 643.
¶57 In sum, an easement created by reference in an instrument of conveyance to a plat or certificate of survey adequately describing the easement is an express easement. The term “express” is defined as “[cjlearly and unmistakably communicated; directly stated.” Black’s Law Dictionary 620 (Bryan A. Garner ed., 8th ed., West 2004); cf. § 28-2-103, MCA (defining an “express” contract as “one the terms of which are stated in words”). The term “expressed” is defined as “[djeclared in direct terms; stated in words; not left to inference or implication.” Black’s Law Dictionary 620. Consistent with these definitions, the intent to create an easement must be clearly and unmistakably communicated on the referenced plat or certificate of survey using labeling or other express language. This is the minimal requirement to establish the easement. An easement may not be inferred or implied from an unlabeled or inadequately described swath of land or other such depiction appearing on a plat or certificate of survey.
B. Application of the Doctrine to the Cobban Placer Patent
*421 ¶58 Relying on Majers, Bache, Halverson, Tungsten Holdings, Ruana, and Pearson, OLR maintains that the United States expressly reserved a public road across the Cobban Placer, for purposes of ingress to and egress from the Plymouth Rock Placer and the Plymouth Rock Extension Placer, when it issued the Cobban Placer patent. OLR asserts that all three of these parcels were “in common ownership” when the patent was issued in 1896; that MS 4200 and the corresponding field notes were incorporated into the patent; that a road traversing the Cobban Placer is “clearly depicted” on MS 4200; and that this road is “public” because it “continued to and from public property on the east and the west of the Cobban Placer.”
¶59 The Landowners respond that the 1896 grant of the Cobban Placer does not come within our easement-by-reference doctrine for a variety of reasons. First, the Landowners point out that the Cobban Placer, the Plymouth Rock Placer, and the Plymouth Rock Extension Placer were each segregated from the public domain and became the property of the respective claimholders when the mining claims were located in 1892, 1889, and 1890, respectively. Therefore, the Landowners argue, when the Cobban Placer patent was issued in 1896, the three parcels were not “in common ownership.” Second, the Landowners assert that a mere reference in a federal land patent to a mineral survey that depicts a road is not evidence of an intent to reserve a public easement and that the designation “Road” on a mineral survey is, in and of itself, no more significant than the designations “Fence,” “Cabin,” “Creek,” “Mineshaft,” “Dam,” etc. Third, the Landowners contend that our easement-by-reference doctrine serves to create private, not public, easements. Lastly, the Landowners argue that our easement-by-reference doctrine only applies to plats and certificates of survey that have been filed and recorded with the county clerk and recorder. They contend that the safe and orderly transfer of land titles depends on the ability of purchasers and title examiners to find all documents pertaining to the title of the subject property at a central repository within each county and that the District Court’s approach in the case at hand undermines this established system.
¶60 We agree with the Landowners that the Cobban Placer documents of conveyance do not meet the requisites of our easement-by-reference doctrine; however, we need not address all of the points raised by the Landowners because the following two considerations are sufficient to resolve this issue.
¶61 First, we have only recognized the creation of privately-held *422 easements under our easement-by-reference cases. We have never applied the doctrine to create a public road, and we decline to do so under the circumstances presented here. As the Landowners point out, the creation of public roads in 1896 was governed by specific provisions of law which generally required an official action on the part of the public authority. See Barnard Realty Co. v. City of Butte, 48 Mont. 102, 109-10, 136 P. 1064, 1067 (1913); State ex rel. Dansie v. Nolan, 58 Mont. 167, 172-73, 191 P. 150, 152 (1920). OLR and the Dissent would have this Court hold that a public road could be established by a method not contemplated by any provision of law in 1896-namely, by referring in a federal land patent to a mineral survey which depicts a road labeled “ROAD.” However, it would be inappropriate for this Court, by judicial fiat 112 years after the fact, to adopt this as a method of creating public roads in 1896-particularly since such a “public-road-by-reference” doctrine would enable a grantor to circumvent the procedures and formalities that existed in 1896 and unilaterally create a public road, thereby saddling the public authority with responsibility for the new public road without any acceptance whatsoever by the public authority.
¶62 Second, as explained above, the intent to create the subject easement must be clearly and unmistakably communicated on the referenced plat or certificate of survey using express language. Here, however, there is no label or other express language on MS 4200 communicating an intent to reserve the depicted road as a “public” road. Nor is there any evidence in the field notes or in the Cobban Placer patent itself of an intent on the part of the federal government to reserve a public road across the Cobban Placer. The label “ROAD” on MS 4200 is not sufficient under any of our cases to create an easement in favor of the public. Moreover, the evidence in the record before us reflects that creating a public road was not the federal government’s intent. The Cobban Placer, the Plymouth Rock Placer, and the Plymouth Rock Extension Placer were segregated from the public domain in 1892, 1889, and 1890, respectively. At that point, each mining claimholder had the exclusive right to possession and enjoyment of all the surface included within the lines of his respective parcel. See ¶ 3, supra. It is highly improbable that the United States, when it issued the Cobban Placer patent in 1896, would reserve a public road across the Cobban Placer to access two parcels which had left the public domain six years (the Plymouth Rock Extension Placer) and seven years (the Plymouth Rock Placer) earlier and which were, in 1896, in the exclusive possession of the claimholder (John T. Reese). *423 Indeed, OLR’s expert opined that the label “road” on a plat or survey is not indicative of a public road unless the road is providing access to and from public lands on both sides of the property at issue. See ¶ 34, supra. We therefore do not agree with OLR’s contention that the mere depiction of a road labeled “ROAD” on MS 4200 clearly and unmistakably communicates an intent to reserve a “public” road.
¶63 The Dissent argues that the federal government’s intent to reserve a public road across the Cobban Placer is clear in light of R.S. 2477. Dissent, ¶ 137. However, the fact that the Dissent is resorting to R.S. 2477 in order to ascertain the meaning of the label “Road” on MS 4200 only confirms that the federal government’s supposed intent to reserve a public road is not clearly and unmistakably communicated on MS 4200 using appropriate labeling or other express language.
¶64 For the foregoing reasons, we hold that the reference in the Cobban Placer patent to MS 4200 did not reserve a public road across the Cobban Placer under our easement-by-reference doctrine.
¶65 Before concluding, it is necessary to address the Dissent’s assertion that this Opinion somehow “reaches a result at odds with the practical realities of the history of property ownership in Montana, particularly with respect to the location and patenting of mining claims in and around Butte.” Dissent, ¶ 101. This diaphanous remark is based entirely on the Dissent’s own theory of this case-not on the theory actually argued by the parties-and on factual assumptions that are not supported by the record before us. Moreover, the Dissent’s assertion is disconnected from any property law applicable to the Cobban Placer patent. The Dissent fails to cite a single statute in effect in 1896 supporting a result contrary to the holdings reached herein. The Dissent likewise fails to cite any caselaw in effect in 1896 supporting a result contrary to the holdings reached herein.
¶66 It appears that the Dissent would graft R.S. 2477 onto this Court’s easement-by-reference doctrine and then apply this new public-road doctrine retroactively, and indiscriminately, to countless land transfers across the span of more than 100 years, resulting in the creation of untold numbers of unforeseen-and unintended-public servitudes across countless parcels of land in this state. The Dissent would do so without regard for “the special need for certainty and predictability where land titles are concerned,” Leo Sheep, 440 U.S. at 687, 99 S. Ct. at 1413, and without regard for “the substantial impact” that implying rights-of-way would have on property rights granted over 100 years ago, Leo Sheep, 440 U.S. at 682, 99 S. Ct. at 1411.
*424 ¶67 As a matter of construing the federal government’s intent in issuing the Cobban Placer patent, we may not upset long-settled expectations to accommodate a vague and unsubstantiated right to construct a 60-foot-wide public highway without compensation to the servient Landowners. Leo Sheep, 440 U.S. at 681-82, 687-88, 99 S. Ct. at 1410-11, 1413-14. Quite to the contrary, past, present, and future generations of Montana landowners have the right to be secure in the knowledge that they will not wake up one morning to find that a community or organization has decided to build a 60-foot-wide public highway through their back yards based on nothing more than a surveyor’s notation of a 6-foot-wide dirt road on a 115-year-old mineral survey and a healthy dose of sophistical prestidigitation.
CONCLUSION
¶68 The federal government did not reserve a public road across the Cobban Placer by virtue of the reference in the Cobban Placer patent to MS 4200. Accordingly, we hold that the District Court erred in its determination that the road traversing the Cobban Placer is a public road pursuant to an express easement by reservation created in MS 4200 and referred to in the conveying documents of the Cobban Placer.
¶69 Reversed.
DISTRICT JUDGE JONES, sitting for CHIEF JUSTICE GRAY, JUSTICES COTTER and RICE concur.

 Jeffrey A. Beckett, Jeannie A. Stallings, Jennifer A. Kochel, and Jill A. Johns-who appeared with the Petersons, the Woods, and the Clarks as defendants in the District Court-did not file notices of appeal and are not parties to this appeal.

 Act of May 10, 1872, ch. 152, 17 Stat. 91, codified at R.S. §§ 2319-2328, 2331, 2333-2337,2344, recodified as amended at 30 U.S.C. §§ 22-24,26-28, 29, 30, 33-35, 37, 39-42, 47.

 A lode claim is a mining claim “to a well-defined vein embedded in rock,” whereas a placer claim is a mining claim “where the minerals are not located in veins or lodes within rock, but are usu. in softer ground near the earth’s surface.” Black’s Law Dictionary 1016 (Bryan A. Gamer ed., 8th ed., West 2004).

 A patent, in this context, is “the deed of the government, state or federal, by which it passes title to its lands.” J. Grimes, Thompson on Real Property vol. 5B, § 2725, at 383 (1978).

 OLR’s expert testified in the District Court concerning Survey No. 5154’s field notes, which detail the courses followed and the landmarks observed by the surveyor of the Plymouth Rock Extension Placer. The expert stated that “along the east end line” the surveyor encountered a road headed in an easterly direction. We note, however, that the east-end line referred to in Survey No. 5154’s field notes is “the east-end line of Sur. No. 5153,” i.e., the east-end line of the Plymouth Rock Placer (the middle parcel). Thus, Survey No. 5154’s field notes establish that the road crossed the east-end line of the Plymouth Rock Placer, which is the iwesi-end line of the Plymouth Rock Extension Placer. The field notes do not mention a road crossing the northern, eastern, or southern boundaries of the Plymouth Rock Extension Placer, and the road is depicted on Survey No. 5154 as terminating on the Plymouth Rock Extension Placer.

 Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at R.S. 2477, recodified at 43 U.S.C. § 932, repealed by Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 706(a), 90 Stat. 2743, 2793.

 In addition to these three theories, OLR raised a number of other theories during the course of the proceedings in the District Court. In its amended complaint, OLR alleged prescriptive use by the public; however, OLR did not pursue this theory at the summary judgment stage. Furthermore, when OLR first articulated its reservation theory (in its brief in support of its motion for summary judgment), OLR discussed easements implied from prior existing use, easements implied by necessity, and easements created by express reservation. OLR then argued that “the federal government reserved an implied easement across the Cobban Placer.” In response, the Landowners asserted that “an express reservation cannot be implied.” Thus, assuming that OLR was relying on the two implied-easement theories as well as an express-easement theory, the Landowners addressed all three. However, OLR subsequently clarified that it was arguing an “express easement by reservation.”

 Included with the expert’s report is a Northern Pacific Railway map, dated 1890-1914, which shows a small portion of the road. However, this map depicts the road entering the Cobban Placer from the west, whereas MS 4200 depicts the road entering from the northwest. According to the report and the expert’s testimony, the shift from the northwest access point shown on MS 4200 to the west access point shown on the 1890-1914 map occurred sometime between 1893 and 1914. In other words, the map dated 1890-1914 necessarily post-dates MS 4200.

 The Landowners also point out that OLR’s “federal common law” theory is raised for the first time on appeal. It was not argued in the District Court and, thus, was not considered by the District Court in evaluating OLR’s motion for summary judgment.

 The Supreme Court also rejected the government’s theory of an implied easement by necessity, noting that because the government has the power of eminent domain, the easement was not a necessity. See Leo Sheep, 440 U.S. at 679-80, 99 S. Ct. at 1409-10.

 This provision or language similar thereto, which appeared in a number of land patents during this period, has been characterized as an “express reservation.” See Montana Mining Co. v. St. Louis Mining & Milling Co., 183 F. 51, 61 (9th C.C. 1910); see also Waterloo Mining Co. v. Doe, 82 F. 45, 50 (9th C.C. 1897); Montana Co. v. Clark, 42 F. 626, 628-29 (C.C.D. Mont. 1890).

 Prior to July 1, 1895, a public highway could have been established by the act of the proper authorities, as provided by statute; by use by the public, for the period of the statute of limitations as to lands, of the exact route confined to the statutory width of a highway, later claimed to be a public highway; by the opening and dedication of a road by an individual owner of the land; or on a partition of real property. Effective July 1,1895, no route of travel could become a public highway until declared so by the public authorities or made so by the owner’s dedication of the land affected. See Nolan, 58 Mont. at 172,173,191 P. at 152; Barnard Realty Co. v. City of Butte, 48 Mont. 102,109-10,136 P. 1064,1067 (1913).